STAMM INTERNATIONAL CORP., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2690-84, 5543-84,     Filed February 22, 1988. 8225-86.

*E.A. Dominianni, Michael J. Calvey,* and *Paula Silberthau,* for the petitioner.

*Richard J. Sapinski, Eugene J. Wien,* and *Lisa Primavera-Femia,* for the respondent.

OPINION

COHEN, *Judge:* Respondent has filed a motion to withdraw memorandum of settlement and recalendar for trial, seeking to avoid the provisions of a memorandum of settlement filed November 25, 1986. Respondent contends that the agreed settlement was intended to be a "bottom line" settlement in which petitioner would pay between $1.8

million and $1.9 million. Petitioner contends that the settlement was on an issue-by-issue basis and should be enforced in accordance with its terms, although application of a provision of the Internal Revenue Code overlooked by respondent's counsel reduces substantially the amount to be paid by petitioner.

*Chronology*

By notice served May 6, 1986, docket Nos. 2690-84 and 5543-84 were set for trial in New York City on October 6, 1986.

In a joint motion to calendar docket No. 8225-86 and to consolidate all dockets, filed August 13, 1986, the parties stated:

Each of the above-captioned cases involved a single common issue, i.e., whether any amount was includable in petitioner's income pursuant to I.R.C. sec. 951, et seq. as a deemed distribution from PowRmatic, S.A., a wholly owned subsidiary of petitioner and the consequences thereof to petitioner.

The joint motion was granted August 20, 1986.

Prior to August 29, 1986, the parties represented to the Court, during conference telephone calls, that the estimated time for trial of the cases was not less than 3 days and that, therefore, trial could not be completed during the regular session commencing October 6, 1986.[1] Consequently, the Court ordered that the cases be continued to a special session of the Court to commence on November 12, 1986. The Court ordered the submission of trial memoranda and expert reports no later than October 15, 1986.

On October 16, 1986, the parties reported to the Court that they had reached a basis of settlement. On October 24, 1986, the Court canceled the special session and directed the filing of a stipulation of settled issues by November 12, 1986, and stipulations for entry of decisions with computations for decisions by December 22, 1986.

On November 12, 1986, the parties reported to the Court that they had not completed their stipulation of settled issues, but that it would be ready for filing the following

---

[1]This representation later was found to be erroneous. The consequence was waste of time and resources of the Court. See generally *Brooks v. Commissioner*, 82 T.C. 413, 429-430 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985).

week. On November 25, 1986, the parties filed a memorandum of settlement.

The memorandum of settlement, in 15 paragraphs, sets forth the agreement of the parties. The agreement did not mention the total dollars to be paid by petitioner but contained specific provisions for the handling of certain items in issue as well as executory agreements for nondocketed years. Pertinent provisions of the agreement were as follows:

The parties respectfully (i) notify the Court that the above-referenced cases have been settled and that this Memorandum of Settlement constitutes their stipulation of settled issues required to be filed by the third decretal paragraph of the Court's order dated October 24, 1986; and (ii) request that the Court amend the fourth decretal paragraph of the order dated October 24, 1986 to require that the parties submit to the Court their stipulations for entry of decisions with computation of the deficiencies in tax (if any) under the Internal Revenue Code on or before January 15, 1987.

1. Respondent concedes that petitioner has no income under I.R.C. sec. 951, et seq. and no deficiency in income tax with respect to the fiscal years ended June 30, 1978 (Docket No. 2690-84), June 30, 1979, and June 30, 1980 (part of Docket No. 5543-84).

2. Petitioner concedes that it has realized a dividend under subpart F, I.R.C. (i.e. sec. 951, et seq.) with respect to PowRmatic, S.A., a controlled foreign corporation of which petitioner is the sole shareholder, in the following amounts from which the expenses in paragraph 3 should be deducted:

| Docket No. | Year ended | Foreign personal holding company income | Foreign base company services income | Sec. 956 |
|---|---|---|---|---|
| 5543-84 | 6/30/81 | $0 | $158,280 | $0 |
| 8225-86 | 6/30/82 | 123,017 | 135,960 | 432,967 |
| 8225-86 | 6/30/83 | 247,515 | 132,588 | 76,999 |
| Nondocketed | 6/30/84 | 164,541 | 134,000 | 191,000 |
| Nondocketed | 6/30/85 | 211,835 | 158,509 | 0 |

\* \* \* \* \* \* \*

5. Petitioner may file a consolidated federal income tax return with PowRmatic, Inc. for its fiscal year ended June 30, 1986. Petitioner agrees that for its fiscal year ended June 30, 1986 it will report all interest and dividend income, gains from sale of securities and all other items representing foreign personal holding company income and foreign base company income of PowRmatic, S.A., less allowable general and administrative expenses, as a dividend under I.R.C. sec. 951, et seq. and will not

claim that any portion thereof is exempt under any exception to subpart "F" income found in I.R.C. secs. 951-954.

6. Petitioner will provide to respondent an affidavit made by Arthur A. Stamm certifying under penalties of perjury that all loans made to Arthur A. Stamm or PowRmatic, Inc. by PowRmatic, S.A. during the fiscal year ended June 30, 1986 or thereafter have been fully repaid by December 31, 1986 and will not be renewed thereafter (directly or indirectly) in any manner, during the fiscal year ended June 30, 1987. Respondent agrees that upon receipt of this affidavit, respondent will not assert that petitioner had any amount includible in income under I.R.C. sec. 956 for the fiscal year ended June 30, 1986.

7. Within 15 days after the filing of the decision documents in this case, petitioner will deliver a check to respondent for the full amount of the deficiencies in I.R.C. sec. 11 tax, interest on the I.R.C. sec. 11 tax and interest on the I.R.C. sec. 541 tax due from petitioner for the fiscal years ended June 30, 1981 through June 30, 1985.

8. Petitioner contends that Arthur A. Stamm has included in his gross income in the taxable year ended December 31, 1985 the amount of $128,961 arising as an imputed distribution from the earnings and profits of petitioner or his relationship with PowRmatic S.A., and that the portion of the deficiency dividend to be paid under paragraph 9 of this agreement to Arthur A. Stamm and the deficiency dividend amount for 1985 are to be reduced by this amount. Petitioner shall submit all necessary verification of this item to respondent by December 3, 1986. Respondent shall have until December 12, 1986 to concur or disagree regarding petitioner's treatment of this item. If Respondent rejects petitioner's treatment of this item this agreement shall be void.

9. Petitioner will pay, within 15 days of the filing of the decision documents in this case (but not earlier than January 15, 1987), a deficiency dividend to its shareholders (the shareholders of petitioner to be determined as if PowRmatic S.A. were not a shareholder of petitioner), subject to the provisions of paragraph 8. On payment of the deficiency dividend, petitioner will withhold and pay over 20 percent of the dividend as a withholding tax to be credited pro-rata to each shareholder. In addition, petitioner will file for the year 1987 and furnish to each of its shareholders a Form 1099-DIV showing the amount of the dividend paid and the withholding tax deducted.

\*    \*    \*    \*    \*    \*    \*

15. Since the settlement covers three non-docketed tax years of the petitioner, it is subject to the concurrence by the District Director, Newark, New Jersey as to the non-docketed years. If the District Director does not concur in the settlement this agreement shall be void. Such concurrence shall be received prior to filing the decision documents in this case. It is understood that the execution of the closing agreement by the District Director shall not preclude the audit of petitioner's return for any open, non-docketed year except with respect to the issues covered by this agreement (subpart F income and deductions) relating to PowRmatic, S.A.

On January 15, 1987, the parties reported to the Court that they needed more time to submit their agreed decisions. As of that time, no questions were raised about the efficacy of the settlement agreement.

During a meeting on February 12, 1987, among respondent's counsel, a revenue agent, and petitioner's accountant, the applicability of section 959[2] to the calculation of the correct amount of the deficiencies was raised. Prior to this meeting, respondent's counsel had not taken account of section 959, which, for reasons discussed below, would reduce the total amount to be paid by petitioner to approximately $1.1 or $1.25 million. Petitioner's attorneys had discussed among themselves the effect of section 959 on the computation prior to execution of the settlement agreement, and they had been aware that respondent's counsel was not giving effect to that section. They had not, however, discussed section 959 with respondent's counsel or otherwise called attention to his apparent error.

Starting in about March 1987, respondent's counsel attempted to reopen negotiation of the settlement agreement and proposed alternative adjustments that would restore the prospective amount to be paid by petitioner to $1.8 or $1.9 million. These negotiations were unsuccessful. On June 30, 1987, respondent filed a motion to withdraw memorandum of settlement and recalendar for trial, arguing that mutual mistake of fact as to the "cost of the settlement" and prevention of manifest injustice require that the settlement agreement be set aside.

Hearing on respondent's motion was set in New York City on September 14, 1987. In response to statements made in affidavits filed by petitioner in opposition to the motion and to inquiries by the Court, respondent now contends that (1) relief should be based on the unilateral mistake of his counsel, known to petitioner's counsel at the time of the agreement, and (2) the agreement does not address the application of section 959, which therefore precludes effectuation of the terms of the settlement agreement.

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect during the years here in issue.

## Discussion

Certain things are apparent from the record. First, respondent is seeking relief from the settlement agreement because the computations for entry of decisions result in a total amount due from petitioner that is less than 70 percent of the amount that respondent's counsel expected to be received from the settlement.

Second, respondent is not arguing that the agreement was not properly authorized or otherwise binding; he simply asserts that, as a matter of contract, he should be relieved of the agreement.

Third, petitioner's counsel entered into the agreement with knowledge that respondent's counsel had miscalculated the dollar cost of the agreement. Thus the mistake was unilateral and not mutual.

Fourth, the memorandum of settlement does not contain any reference to dollar amounts to be paid by petitioner. It sets forth the resolution of specific issues, provides for other calculations, and provides for submission of "computation of the deficiencies in tax (if any) under the Internal Revenue Code." (The reference to the Internal Revenue Code was inserted by petitioner's counsel, and agreed to by respondent's counsel, after they became aware of the mistake of respondent's counsel.)

The two difficult questions to be answered, however, are (1) whether respondent has established grounds for relief from the settlement agreement, and (2) whether the settlement agreement requires application of section 959.

### Grounds for relief.

Notwithstanding repeated inquiry from the Court, respondent has cited no authority that supports his claim that he is entitled to be relieved of the agreement because of his unilateral miscalculation of the amount that would be owing by petitioner under the agreement. He cites *Saigh v. Commissioner,* 26 T.C. 171 (1956), for the proposition that the Court may, in its discretion, upon consideration of facts and circumstances, set aside a settlement stipulation. In that case, however, the Court refused to set aside a stipulation improvidently entered into by the Commissioner. The Court recognized that "Excusable damaging reliance

upon a false or untrue representation of the other party, even one innocently made, is a recognized ground for relief from a settlement stipulation." (26 T.C. at 180.) Here, at most, we have a misleading silence by petitioner's counsel; but respondent does not argue that petitioner's counsel has an obligation to advise respondent's counsel of the provisions of the Internal Revenue Code. Thus, at least in the context of these consolidated cases, silence is not the equivalent of a misrepresentation.

Respondent also cites *Adams v. Commissioner,* 85 T.C. 359 (1985), for the proposition that "the primary consideration in determining whether a settlement stipulation should be set aside is whether such action is necessary to prevent manifest injustice." *Adams,* however, was concerned with a pretrial agreement treated as the equivalent of a pretrial order under rule 16, Federal Rules of Civil Procedure. Rule 16 specifically provides that pretrial orders may be modified "to prevent manifest injustice." That determination, however, takes into account the injury to the opposing party and the inconvenience to the Court, as well as possible injustice to the moving party. See *Adams v. Commissioner,* 85 T.C. at 375. The chronology shown above adequately demonstrates the injury to petitioner and the inconvenience to the Court in relieving respondent of the settlement agreement and resetting the case for trial. In any event, respondent has cited, and we have found, no case suggesting that recovery of a lesser judgment than anticipated constitutes manifest injustice. (If that were so, respondent and the Court would no doubt be faced with many motions by taxpayers to vacate agreed decisions after such taxpayers received a bill showing the full amount of interest and time-sensitive additions to tax owing on deficiencies.)

Moreover, more stringent standards should be applied to a motion to vacate a settlement agreement at this stage of a proceeding than to modifying a pretrial order pursuant to which a case is tried. In these cases, the settlement agreement led to vacation of the trial date and would have led to entry of decisions had the parties complied with their agreement and the Court's order with respect to submission of settlement documents. The considerations, therefore, are

more akin to those involved in vacating a judgment entered by consent. In such cases, the parties are held to their agreement without regard to whether the judgment is correct on the merits. See *United States v. Armour & Co.,* 402 U.S. 673, 681-682 (1971); *Swift & Co. v. United States,* 276 U.S. 311, 324 (1928); *Hoffman v. Celebrezze,* 405 F.2d 833, 836-837 (8th Cir. 1969). See also *Commissioner v. Estate of Long,* 304 F.2d 136 (9th Cir. 1962), affg. unreported orders of this Court.

*Interpretation of the agreement.*

At the time of the hearing, the Court expressed concern that denying respondent's motion to withdraw the settlement agreement would be futile unless the settlement agreement were susceptible of enforcement. In other words, if the settlement agreement could not be interpreted to compute the amount of the deficiencies owing by petitioner, or if the settlement agreement did not resolve a dispute as to application of section 959, it might be necessary to have a trial. In such circumstance, the inconvenience to petitioner and to the Court of recalendaring the cases for trial would be unavoidable. The Court requested argument from the parties as to the correct interpretation of the agreement on this issue.

Respondent argues that the settlement agreement is ambiguous and that its meaning cannot be determined without regard to the circumstances surrounding the contract, including the negotiations and discussions of a "bottom line" settlement. Petitioner argues that the agreement expressly and by implication of law incorporated all applicable provisions of the Internal Revenue Code, including section 959.

The agreement, as quoted above, contains no reference to section 959. Paragraph 2 contains a concession by petitioner that "it has realized a dividend under subpart F, I.R.C. (i.e. sec. 951, et seq.)" in amounts set forth in a table. The last column of the table is headed "Sec. 956." Respondent now argues that the amounts listed under that column heading were to be fully included in income under section 951(a)(1)(B), and states:

Sec. 959(a)(2) can only apply if the parties intended that the amounts listed under the column heading "Sec. 956" were to be considered "956(a)(2) amounts."

* * * * * * *

From a reading of the language of the Code it is apparent that the column heading "Sec. 956" is indefinite and ambiguous. It is susceptible of two meanings: one, the amount determined under sec. 956(a)(2) or two, the amount determined under sec. 951(a)(1)(B). [Fn. ref. omitted.]

We cannot agree, however, that an amount labeled "Sec. 956" can as readily apply to amounts determined under section 951. Both section 951(a)(1)(B) and section 956(a)(2) contain cross-references to section 959, and it is unreasonable to read either paragraph 2 of the settlement agreement or the sections specifically referred to therein as if section 959 did not exist.

Subpart F, entitled "Controlled Foreign Corporations," contains sections 951 through 964, inclusive.[3]

The question presented is whether the settlement agreement intended that the amounts set forth in the column labeled "Sec. 956" are totally includable as income or are only includable as income after adjustments for earnings and profits under section 959. The basic rule of inclusion is set forth in section 951(a) as follows:

SEC. 951(a). AMOUNTS INCLUDED.—

(1) IN GENERAL.—If a foreign corporation is a controlled foreign corporation for an uninterrupted period of 30 days or more during any taxable year, every person who is a United States shareholder * * * of such [controlled foreign] corporation and who owns * * * stock in such corporation * * * shall include in his gross income, for his taxable year in which or with which such taxable year of the corporation ends—

(A) the sum of—

(i) his pro rata share (determined under paragraph (2)) of the corporation's subpart F income for such year,

(ii) his pro rata share (determined under sec. 955(a)(3) as in effect before the enactment of the Tax Reduction Act of 1975) of the corporation's previously excluded subpart F income withdrawn from investment in less developed countries for such year, and

(iii) his pro rata share (determined under sec. 955(a)(3)) of the corporation's previously excluded subpart F income withdrawn from foreign base company shipping operations for such year; and

---

[3]Petitioner quotes certain provisions of sec. 959(a) in the 1986 Internal Revenue Code. We are concerned here with the fiscal years ended June 30, 1981, 1982, and 1983, and we have dealt with the specific provisions of the Code as of that time. There appear to be no differences between the provisions significant to our present problem.

(B) his pro rata share (determined under sec. 956(a)(2)) of the corporation's increase in earnings invested in United States property for such year (but only to the extent not excluded from gross income under sec. 959(a)(2)).

Section 956 sets forth rules for "Investment of Earnings in United States Property." Section 956(a)(2), referred to in section 951(a)(1)(B), provides:

(2) PRO RATA SHARE OF INCREASE FOR YEAR.—In the case of any United States shareholder, the pro rata share of the increase for any taxable year in the earnings of a controlled foreign corporation invested in United States property is the amount determined by subtracting his pro rata share of—

(A) the amount determined under paragraph (1) for the close of the preceding taxable year, reduced by amounts paid during such preceding taxable year to which sec. 959(c)(1) applies, from

(B) the amount determined under paragraph (1) for the close of the taxable year.

The determinations under subparagraphs (A) and (B) shall be made on the basis of stock owned (within the meaning of sec. 958(a)) by such United States shareholder on the last day during the taxable year on which the foreign corporation is a controlled foreign corporation.

(3) AMOUNT ATTRIBUTABLE TO PROPERTY.—The amount taken into account under paragraph (1) or (2) with respect to any property shall be its adjusted basis, reduced by any liability to which the property is subject.

Section 959(a)(2), referred to in section 951(a)(1)(B), provides:

SEC. 959(a). EXCLUSION FROM GROSS INCOME OF UNITED STATES PERSONS.—For purposes of this chapter, the earnings and profits for a taxable year of a foreign corporation attributable to amounts which are, or have been, included in the gross income of a United States shareholder under sec. 951(a) shall not, when—

\* \* \* \* \* \* \*

(2) such amounts would, but for this subsection, be included under sec. 951(a)(1)(B) in the gross income of,

such shareholder (or any other United States person who acquires from any person any portion of the interest of such United States shareholder in such foreign corporation, but only to the extent of such portion, and subject to such proof of the identity of such interest as the Secretary may by regulations prescribe) directly, or indirectly through a chain of ownership described under sec. 958(a), be again included in the gross income of such United States shareholder (or of such other United States person).

Section 959(c)(1), referred to in section 956(a)(2)(A), provides:

SEC. 959(c). ALLOCATION OF DISTRIBUTIONS.—For purposes of subsections (a) and (b), sec. 316(a) shall be applied by applying paragraph (2) thereof, and then paragraph (1) thereof—

(1) first to earnings and profits attributable to amounts included in gross income under sec. 951(a)(1)(B) (or which would have been included except for subsec. (a)(2) of this section),

Respondent is, in effect, arguing that he should pick and choose among the cross-references to sections within subpart F to maximize the amount includable as a dividend so as to retain the "bottom line" settlement that his counsel had calculated during the pre-agreement negotiations. We need not, for this purpose, expound on the apparent purposes of the interrelated sections. Petitioner has done so in its memorandum, and respondent has not quarreled with petitioner's description. The error by respondent's counsel was perhaps understandable in view of the complexity of these sections. We conclude, however, that petitioner is correct that all of the sections must be applied in computing the deficiencies under the settlement agreement.

The memoranda of the parties reflect other disputes, including whether prior negotiations constitute an admission by respondent that section 959 applies. The parties also disagree as to computation under section 959 and the resulting deficiencies. Resolution of these disputes does not affect our conclusion that section 959 is necessarily brought into play by the express terms of paragraph 2 of the memorandum of settlement.

In his supplemental memorandum of law filed November 23, 1987, respondent, for the first time, contends that the settlement agreement is not binding because the District Director has not concurred in the settlement with respect to nondocketed years, as required by paragraph 15 of the memorandum of settlement. In view of the parties' repeated promises to the Court that the decision documents would be filed by January 15, 1987, it is far too late for respondent now to be claiming that such concurrence has not been obtained. We regard prior representations to the Court

about the status of the settlement as precluding any other grounds for claiming that the agreement is void.

*An appropriate order will be issued.*