AMILE AND PARVANE KORANGY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Korangy v. Commissioner
Docket No. 25984-87
United States Tax Court
T.C. Memo 1989-2; 1989 Tax Ct. Memo LEXIS 2; 56 T.C.M. (CCH) 989; T.C.M. (RIA) 89002; January 4, 1989
Janet M. Meiburger and Carmen Irizarry-Diaz, for the petitioners. Wilton A. Baker, for the respondent. WELLS
MEMORANDUM OPINION WELLS, Judge: Petitioners have filed a Motion to Modify or, in the Alternative, Vacate Stipulation of Agreed Adjustments as Based on a Fundamental Mistake of Fact and Therefore Not in Accordance with the Settlement Between the Parties (the "Motion"). Petitioners seek to avoid the provisions of a Stipulation of Agreed Adjustments (the "Stipulation") signed by them and respondent, and base the Motion on their contention that a single deposit to one of their bank accounts in the amount of $ 227,987.50 mistakenly was included twice in the Stipulation's calculation of their 1982 taxable *3 income. Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax Under Sections [1]
Deficiency
6653(a)
6653(b)(1)
6653(b)(2)
6661
1981
$  91,259
$ 4,563
-0- -0-
-0-  1982
$ 321,094
-0- $ 160,547 * $ 31,560
1983
$ 155,593
-0- $  79,038 * $ 15,559
1984
$ 308,046
-0- $ 155,678 * $ 30,805
In his Answer, respondent asserted as an alternative position that petitioners were liable for additions to tax under sections 6651(a)(1) and 6653(a)(1) and (2) for any of the years 1982-1984 in which the fraud additions under section 6653(b) were inapplicable. Petitioners filed their petition while residing in Potomac, Maryland, and the case was set for trial on the May 23, 1988, trial calendar in Washington, D.C. On May 21, 1988, the parties *4 signed the Stipulation. At the calendar call on May 23, 1988, the parties filed the Stipulation with the Court, and accordingly, no trial was held. The Stipulation consists of adjustments schedules for the four years in issue and a one-page explanatory statement which states, "The below-signed parties agree that the attached schedule of agreed adjustments identified the manner in which all undisputed issues have been resolved." No final computation of the dollar amount of the deficiency for any year is set forth in the Stipulation. Rather, the adjustments schedules are a line-by-line list of all issues which had been in dispute for each of the taxable years 1981 through 1984. The format of the adjustments schedules, as shown by the entry for the item now in dispute, is as follows: SOURCE
AMOUNT OF ADJUSTMENT
Original
Respondent
Petitioner
Description
Year
Adjustment
Concedes
Concedes
Unexplained
Deposits
1982
637,647
93,120
544,527
The adjustments schedules showed either a partial concession by both petitioners and respondent or a total concession by one party for each year for each item of income or loss and for each of *5 the additions to tax. At the time the Stipulation was filed, the Court ordered that a decision document be filed by July 22, 1988. On July 21, 1988, petitioners' counsel sent a letter to respondent's counsel (the "July 21 letter") indicating that petitioners' position, inter alia, was that the agreed upon deficiency for 1982 was $ 270,415. After the Court extended the time for filing of a decision document, respondent filed a decision document on August 15, 1988, which contained, inter alia, a 1982 deficiency in the amount of $ 270,415 -- the amount set forth in the July 21 letter from petitioners' counsel. On September 6, 1988, petitioners filed several documents with the Court, including the Motion now before us. Petitioners' documents also included a proposed computation of decision showing a 1982 deficiency in the amount of $ 156,421. The difference between that deficiency amount and the $ 270,415 set forth in the July 21 letter and respondent's proposed decision is attributable to what petitioners assert is an erroneous inclusion of $ 227,987.50 in the "Unexplained Deposits" includable in petitioners' 1982 income. Petitioners assert that the $ 227,987.50 represents a *6 single deposit which mistakenly was included twice in the "Unexplained Deposits" includable in their 1982 taxable income, and that they should not be taxed twice on that single deposit. Respondent disagrees on the grounds that if the Stipulation contains a mistake, the mistake is unilateral on petitioners' part and not mutual, and the Court should enforce the Stipulation. In support of his position, respondent cites Stamm International Corp. v. Commissioner,90 T.C. 315 (1988). In Stamm, shortly prior to the scheduled time for trial, the parties negotiated a settlement, which was reduced to a written agreement specifying the manner of resolving various issues. We held that a unilateral error by counsel, in the absence of misrepresentation by the adverse party, was not a sufficient ground to vacate a settlement agreement. We also held that the settlement agreement was susceptible of interpretation and enforcement in accordance with the terms set out in the writing. We view the Stipulation herein as strikingly similar to the settlement agreement in Stamm, i.e., a document resolving the matters in dispute on an issue-by-issue basis. In addition, there *7 is no indication in the instant case of any misrepresentation on the part of respondent. Last, the Stipulation is a written document which is susceptible of interpretation and enforcement in accordance with the terms set out therein. Thus, Stamm would seem to control the resolution of the instant case. Petitioners, however, argue that both respondent and they were laboring under a mutual mistake of fact when the Stipulation was executed, and that under normal contract principles, it would be inequitable for the Court to hold the parties to an agreement based on a mutual material error. Petitioners also argue that Rule 91(e) is authority allowing us to decline enforcement of the Stipulation on the grounds that enforcement would produce an unjust result. We are not swayed by petitioners' arguments. We acknowledge that the compromise and settlement of tax cases is governed by general principles of contract law. [2] As we stated in Stamm, however, the considerations for the Court to take into account are akin to those for the vacating of a consent judgment, and parties are held to their agreements without regard to whether the judgment is correct on the merits. Stamm International Corp. v. Commissioner,90 T.C. at 321-322. *8 In this regard, we find instructive the words of the Supreme Court in United States v. Armour & Co.,402 U.S. 673, 681-682 (1971): Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it. * * * [Emphasis supplied; fn. ref. omitted.] *9 The Stipulation contains no itemization of the composition of each line item of the adjustments schedules; nothing in the Stipulation indicates that only specific deposits and expenditures were to be included in or excluded from the computation of petitioners' taxable income. The adjustments schedules merely set forth final agreed upon dollar amounts of income or deductions for each year for each category, e.g., "Unexplained Deposits," "Employee Business Expenses," "Constructive Dividends," and "Rental Adjustments." We think a statement in 3 Corbin on Contracts, section 608 (1960), describes the situation in the instant case: If the mistake of one party to a written instrument is in thinking that it contains a larger promise by the other party than in fact it does, and the other party has no reason to know of this mistake, of course the mistaken party cannot hold the other to the large promise that he did not make, by getting reformation or otherwise. * * * Petitioners contend that the amount of "Unexplained Deposits" set forth in the Stipulation was based on a list of specific bank *10 deposits, and that the list contains an error, only recently detected by them, which causes the amount of deposits in the Stipulation to be overstated. The Stipulation, however, contains no proviso that the amount of taxable income included under "Unexplained Deposits" is necessarily attributable to specific deposits, or for that matter, that the other listed items of income and expense are necessarily attributable to specific receipts or expenditures. Rather, the Stipulation only sets out for each line item the dollar amount upon which respondent agreed to settle the case. If petitioners thought that they were agreeing to inclusion in their taxable income only of specific deposits, rather than a lump-sum dollar amount, or agreeing to the settlement based upon the accuracy of specified underlying documentation supporting the adjustments schedules, they should have made sure the Stipulation reflected any such condition. A settlement agreement essentially is a compromise, and the mere fact that petitioners now feel more confident about some point that they might not have investigated fully (or, at least, adequately) before entering into the Stipulation is not sufficient grounds for *11 avoiding the Stipulation. Saigh v. Commissioner,26 T.C. 171, 177 (1956). Therefore, to the extent that any mistake was made in the Stipulation, we find that it was merely a unilateral mistake on the part of petitioners, and we hold that in accordance with Stamm and the general principles of contract law, the terms of the Stipulation will be enforced. Likewise, enforcement of the Stipulation is not contrary to Rule 91(e), under which the Court may permit a party to qualify, change, or contradict a stipulation "where justice requires." [3] Petitioners suggest that respondent "will not suffer injury or prejudice by the granting of Petitioners' motion." We cannot agree with that suggestion. If we were to grant petitioners' motion, the case once again would have to be set for trial. At the trial, respondent presumably would be entitled to litigate all other issues embodied in the Stipulation, would be forced to gather witnesses and other evidence which he otherwise might not have, and would be forced to spend additional time preparing for an additional trial. There would be an additional waste of the Court's resources. A judge, trial clerk, and reporter would *12 have to be assigned, and courtroom space would need to be reserved. "These unnecessary burdens on the system are unreasonable and unfair from the standpoint of everyone involved." Brooks v. Commissioner,82 T.C. 413, 429-430 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985). The time for petitioners to make a thorough examination of their case is prior to the date of trial, not subsequent to their execution of a settlement agreement. We perceive of no injustice in holding the parties to the terms of their Stipulation. Accordingly, Petitioners' Motion will be denied, and a decision will be entered in accordance with respondent's *13 proposed decision.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. * 50 percent of the interest payable on the underpayment attributable to fraud.↩
2. Quinones v. Commissioner,T.C. Memo. 1988-269; Himmelwright v. Commissioner,T.C. Memo. 1988-114↩.
3. Rule 91(e) provides: (e) Binding Effect: A stipulation shall be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation, unless otherwise permitted by the Court or agreed upon by those parties. The Court will not permit a party to a stipulation to qualify, change, or contradict a stipulation in whole or in part, except that it may do so where justice requires. * * *↩