ALAN M. & JANET SERGY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sergy v. Commissioner
Docket No. 35644-87
United States Tax Court
T.C. Memo 1990-442; 1990 Tax Ct. Memo LEXIS 459; 60 T.C.M. (CCH) 548; T.C.M. (RIA) 90442; August 15, 1990, Filed Robert Brooks Martin, Jr., for the petitioners. John Kent, Erin Collins, and Howard Rosenblatt, for the respondent. NAMEROFF, Special Trial Judge. NAMEROFF
MEMORANDUM OPINION
*460 This matter is before the Court on petitioner's motion for entry of decision. This case is part of the Mar Oil litigation project, which originally consisted of over 2,500 docketed cases and involved over 300 different partnerships created for the purposes of exploring for, developing and producing oil and gas properties. Three Los Angeles law firms represent taxpayers in more than 1,800 of the docketed cases, as well as uncounted nondocketed cases. Those firms are Hochman, Salkin & DeRoy (Hochman); Martin & Deacon (Martin); and Laski and Gordon (Laski). Hochman, by far, represents the largest group of taxpayers. Martin represents petitioners herein. By statutory notice dated August 5, 1987, respondent determined a deficiency in petitioners' 1980 Federal income tax in the amount of $ 43,010. Respondent made adjustments to a claimed partnership loss for a partnership entitled Sunset Energy Partners. No notice of deficiency was issued by respondent to petitioners for the 1981 taxable year. Petitioners filed their petition in the instant case on November 3, 1987. After several pretrial conferences, cases involving two of the partnerships for the years 1980 and 1981 plus one *461 partnership for the taxable year 1982 were selected to be the test cases for the Mar Oil litigation project. All of the docketed cases involving those partnerships were calendared for trial on September 5, 1989. Counsel for those test cases were Hochman and Lasky (test case counsel). Martin was invited to select test cases and participate in the trial, but opted to defer to the other attorneys. After extensive discovery by both parties and shortly prior to trial, respondent and the test case counsel reported to the Court that a basis of settlement had been reached. Respondent indicated his willingness to extend this basis to all cases in the project. On August 4, 1989, at the request of the Court, test case counsel filed a motion to continue the test cases. Attached to the motion was a letter from Robert B. Martin, Jr. of the Martin law firm stating that he was aware of and concurs to the terms of the proposed settlement, and that he intended to recommend its acceptance to his clients. On August 7, 1989, the Court issued an order continuing the test cases. The order further provided that Hochman, Martin, and Lasky file status reports by October 31, 1989, advising the Court *462 of the number of clients who have accepted and rejected the settlement proposal. An updated status report was required to be filed by December 31, 1989. Respondent was ordered to advise the Court that all divisions of respondent whose consent was necessary for acceptance of the settlement and execution of all the documents required by the settlement, had, in fact, concurred with the basis of settlement. All status reports were timely filed, indicating that nearly all of the clients of the reporting attorney and the various offices of respondent accepted the proposal. Respondent's status report stated: "The terms of the Mar Oil settlement have been approved by all divisions of respondent and Chief Counsel's offices." The report also stated: "The parties are currently working towards informally resolving various jurisdictional and statute of limitations problems. Respondent is also preparing motions for leave and amendments to answer in those docketed cases in which respondent inadvertently failed to disallow all Mar Oil deductions on the original statutory notice of deficiency." (Emphasis added.) On August 3, 1989, respondent delivered to petitioners' counsel by facsimile *463 transmission a copy of a pro forma closing agreement. In the transmission, respondent's attorney stated: "If this agreement is satisfactory and comports with your understanding of the settlement of the MAR OIL cases please send a letter stating for the record that you will be recommending to all of your clients the MAR OIL settlement as set forth in the attached closing agreement." On August 3, 1989, petitioners' counsel sent respondent a letter confirming that the agreement was satisfactory and comported with his understanding of the settlement of the Mar Oil cases and stated that he would recommend that his clients accept respondent's settlement offer. In relevant part, this proposed closing agreement (the original settlement) provided: NOW IT IS HEREBY DETERMINED AND AGREED for Federal income tax purposes that: 1. With respect to the first taxable year of the Oil and Gas Partnership, the taxpayers concede 75% of the deficiency (with respect to TEFRA partnerships, the taxpayers ' [sic] concede 75% of their pro rata share of the partnership adjustments) attributable to the full disallowance of all of the taxpayers' deductions and/or credits in excess of reported *464 income claimed by them with respect to the Oil and Gas Partnership in its first taxable year. The Internal Revenue Service concedes the balance, 25%, of such additional tax with respect to the Oil and Gas Partnership. The concession by the Internal Revenue Service of 25% of such additional tax or pro rata share of partnership adjustments pursuant to this paragraph shall require the taxpayer to reduce his or her basis in the Oil and Gas Partnership in an amount equal to 50% of their "Cash Contribution" to the Oil and Gas Partnership during the first and second taxable years. 2. The taxpayers concede 100% of any asserted deficiency or partnership adjustments, which have been asserted as of the date of this agreement, attributable to the full disallowance of all claimed deductions and/or credits in excess of reported income with respect to the Oil and Gas Partnership in its second and subsequent taxable years. * * * 5. The taxpayers will be allowed an ordinary deduction in determining adjusted gross income in the taxable year 1989 for an amount equal to fifty percent (50%) of their "Cash Contribution" to the Oil and Gas Partnership during the first and second taxable *465 years of the Oil and Gas Partnership. * * * The taxpayers' fifty percent (50%) of their "Cash Contribution" will be reduced (but not below zero) by the amount of the Oil and Gas Partnership's first and second year deductions and/or credits that were deducted on the taxpayers' return and not disallowed. * * * This agreement is final and conclusive except: (1) the matter it relates to may be reopened in the event of fraud, malfeasance, or misrepresentation of material fact; (2) it is subject to the Internal Revenue Code sections that expressly provide that effect be given to their provisions notwithstanding any other law or rule of law except Code section 7121. * * * [Underscoring in original.]
In addition, respondent agreed to concede additions to tax under sections 6653(a), 6659, and 6661 as they might pertain to the Mar Oil issues, while taxpayers agreed to concede the application of section 6621(c). In September, October, and November of 1989, further correspondence occurred between Hochman and respondent concerning the Mar Oil settlement. This correspondence (the revised settlement) reflects that at least Hochman and respondent agreed that in those cases *466 where a taxpayer has loss years barred by the statute of limitations, no deduction would be allowed in the open year and the 1989 deduction for 50 percent of the unrecovered cash cost would not be allowed. There is no indication that either Martin or Laski were "copied" with the September or October letters; however Martin and Laski were "copied" on a November 17 letter, which enclosed a draft of the revised closing agreement. A closing agreement and decision document, reflecting the terms of the original settlement, were sent by respondent to petitioners and were executed by petitioner Alan M. Sergy on December 6, 1989, and by petitioner Janet Sergy on December 4, 1989. Petitioners' counsel also executed the decision document and returned these documents to respondent on December 12, 1989. The decision document provided for a deficiency of $ 32,258 for 1980, respondent's concession of all additions to tax, and petitioners' concession of all additions to tax, and petitioners' concession of the applicability of sec. 6621(c). On December 29, 1989, respondent notified petitioners' counsel by mail that there was a problem in the settlement and requested a change in its terms to *467 reflect the revised settlement. Respondent enclosed revised settlement documents reflecting, inter alia, a deficiency in income tax for the full amount set forth in the notice of deficiency. Respondent stated that the original settlement documents were incorrect since they did not take into account the fact that adjustments for 1981 were barred by the statute of limitations. In addition, the revised closing agreement deleted the provision regarding a deduction in 1989 for a portion of unrecovered cash contributions. By letter dated January 5, 1990, petitioners' counsel wrote to respondent and objected to the revised settlement documents. Petitioners' counsel insisted that the settlement be concluded based on the terms of the original settlement. By letter dated January 17, 1990, respondent's counsel replied that as part of the settlement discussions with Hochman and Lasky, "it was understood that there would be certain special facts and circumstances that would cause special handling of individual cases as well as treatment inconsistent with the overall settlement offer." Respondent asserts this included situations where a year dealt with in the settlement was closed due to the *468 running of the statute of limitations. Respondent further asserts that it was agreed in such a situation that no deduction would be allowed in an open year (year not closed by the statute of limitations) because the taxpayers would have already received tax benefits in excess of those provided for in the general settlement. Respondent thus contends that the settlement is being applied exactly in accordance with the agreement. A revenue agent's report concerning Sunset Energy Partners for the taxable years 1980, 1981 and 1982 was signed by the revenue agent on November 28, 1984. That report makes recommendations for adjustments to each year disallowing all claimed losses. The record does not indicate whether this report was ultimately approved and issued. Suffice it to say that no notice of deficiency was sent to petitioners for 1981, and we have no information regarding the 1982 year. Therefore, no deficiency was "asserted as of the date of the" agreement to the original settlement nor thereafter, and the statute of limitations for 1981 and 1982 has expired. Petitioners ask that this Court enforce the original settlement as embodied in the settlement documents sent to them *469 by respondent and signed and returned by petitioners. In support of the motion for entry of decision, petitioners cite Stamm International Corp. v. Commissioner, 90 T.C. 315 (1988); Himmelwright v. Commissioner, T.C. Memo. 1988-114; and Applestein v. Commissioner, T.C. Memo. 1989-42. In Stamm, shortly prior to trial, the parties advised the Court the a basis of settlement had been reached. The trial was continued and the parties subsequently filed a "memorandum of settlement." Shortly thereafter, respondent moved to vacate the agreement, alleging that respondent had miscalculated the dollar value of the settlement. The taxpayer sought enforcement of the agreement. We held that the unilateral error of one party's counsel, in the absence of misrepresentation by the adverse party, is an insufficient ground to vacate a settlement agreement. In Himmelwright v. Commissioner, supra, the taxpayer and respondent entered into an oral agreement, which settled all disputed issues between the parties. The oral agreement *470 was confirmed by letter from the taxpayer's counsel to respondent. The letter set forth in detail the specific terms of the agreement and requested respondent to contact the writer if there was any disagreement. Apparently, two months after the parties agreed to the settlement, and after the cancellation of a special trial session, respondent was informed that the taxpayer sought to offset net operating loss carrybacks against the settlement amounts. Respondent then sought enforcement of the agreement. Relying upon principles of contract and compromise, we held that there was a binding contract to settle the case as of the date of the letter from the taxpayer's counsel and that decision should be entered in accordance with the terms of the parties' original settlement agreement. The carryback issue, not contained in the pleadings or negotiations, was not permitted to be raised. In Applestein v. Commissioner, supra the parties filed a 14 page stipulation of settled issues detailing the parties' dispositions of the various issues. The parties raised various questions as to the interpretation of the stipulations. The Court held that both respondent and the taxpayers were *471 bound by the terms of their settlement agreement. We then proceeded to interpret that agreement, stating in part: We emphasize that it is each party's responsibility to negotiate a written settlement that accurately reflects each aspect of each adjustment in dispute. To the extent the written settlement does not clearly address certain aspects of the adjustments in question, the Court will not be inclined to insert such terms into the written agreement or to otherwise speculate as to the agreement of the parties." [Applestein v. Commissioner, 56 T.C.M. 1169, 1170-1171, 58 P-H Memo T.C. par. 89,042 at 195 (1989).]
In this case, however, we do not believe that there was a complete meeting of the minds as to all details of the settlement. In each case in which a settlement was enforced by the Court, there was some document that reflected all of the specific terms of the settlement. However, in all the documents filed with the Court in this matter, there has been no clear agreement as to all of the terms of the settlement. In respondent's status report, in which he advises that all divisions of respondent have accepted the terms of settlement, respondent *472 further states that various jurisdictional and statute of limitations problems are still being considered. Thus, at that point in time no definite settlement of terms had been reached that could and would apply to all cases within the project. Subsequently, while Martin may not have been served with a copy of respondent's status report nor copied on some of the correspondence between Hochman and respondent, he was copied on a November 17, 1989 communication and, therefore, should have been aware of the ongoing negotiations. Martin chose to rely on another law firm to negotiate the settlement, and the failure of those two firms to communicate between themselves can hardly be used to respondent's detriment. Apparently respondent, in his attempt to be efficient and to expedite processing of these cases, sent out standard settlement documents to all taxpayers prior to examining the impact of the statute of limitations on each individual case. (The Court did encourage the parties to process the necessary paperwork as quickly as possible.) The time between the first transmission of the original settlement documents and the taxpayers' return of these documents gave respondent time to *473 determine whether there was a statute of limitations problem. Although we would have preferred respondent to have exercised greater care in preparing the settlement documents at issue, we do not believe that petitioners represented by Martin should reap an undue advantage over similarly situated petitioners represented by Hochman and Lasky. We believe that an injustice would occur if we were to require respondent herein to adhere to the terms of the original settlement. Specifically, under these facts, if we were to grant petitioners' motion, the clients of Martin, who have barred years affected by the settlement, [1] would reap an advantage not enjoyed by the clients of Hochman and, perhaps, Lasky. Under these circumstances, even though petitioners received and signed one set of settlements documents, respondent was entitled to resubmit to petitioners the correct set of agreed upon test case settlement documents. *474 Petitioners may argue that, if respondent had desired not to provide the settlement offer to those petitioners who were in a position to assert the statute of limitations for subsequent years, respondent could have included such language in the closing agreement originally sent to petitioners. Perhaps that would have been the preferred method of handling the problem, but it was not the only way. Respondent timely advised the Court of such problems and had ongoing negotiations with Hochman on the subject. Petitioners should have been aware of the variations on the settlement. Accordingly, petitioners' motion for entry of decision will be denied. An appropriate order will be issued. Footnotes
1. We understand that there are a substantial number of other similar cases pending the result of this case.↩