T.C. Memo. 2015-219

UNITED STATES TAX COURT

CHRISTOPHER MCMULLEN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9304-14.                           Filed November 16, 2015.

Pamela K. Tahim, for petitioner.

Paulmikell A. Fabian and Catherine G. Chang, for respondent.

MEMORANDUM OPINION

LAUBER, Judge: This case involves petitioner's Federal income tax liability for 2010. Before the case was called for trial, the parties reached a settlement and filed with the Court a stipulation of settled issues. The stipulation stated that the settlement resolved all issues in the case, and we gave the parties 60 days to file decision documents. Counsel for the Internal Revenue Service (IRS or re-

[*2] spondent) obtained tax computations consistent with the settlement and sent petitioner a proposed decision document based on those computations. Petitioner disagreed with respondent's computations and declined to sign the decision document. Respondent then filed a motion for entry of decision. We will grant respondent's motion and enter a decision consistent with his tax computations, which we have determined to be correct in all respects.

Background

Petitioner is the sole shareholder of HBC Protocols, Inc. (HBC), an S corporation. He filed a late individual income tax return for 2010 on which he did not report on Schedule E, Supplemental Income and Loss, any flow-through income or loss from HBC. His return included a Schedule C, Profit or Loss From Business (Sole Proprietorship), on which he reported gross receipts of $59,491 and total expenses of $102,925. He thus reported on Schedule C a loss of $43,434.[1]

The IRS examined HBC's return and petitioner's individual return and proposed a number of adjustments. It determined that petitioner received unreported wages of $5,571 during 2010 and that he did not have a distinct Schedule C busi-

_____

[1]Unless otherwise noted, all statutory references are to the Internal Revenue Code as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all dollar amounts to the nearest dollar.

**[*3]** ness. Rather, the IRS determined that the gross receipts and expenses reported on petitioner's Schedule C were in fact attributable to his activities on behalf of HBC. The IRS accordingly zeroed out his Schedule C activity, eliminating Schedule C gross receipts of $59,491 and disallowing Schedule C deductions of $102,925, and folded these items into his Schedule E business. After making the latter adjustments, the IRS determined that petitioner had unreported Schedule E flow-through income of $290,703 from HBC.

On May 5, 2014, the IRS sent petitioner a timely notice of deficiency for 2010. This notice determined an income tax deficiency of $98,761, an addition to tax of $9,440 under section 6651(a)(1) for failure to file timely his 2010 return, and an accuracy-related penalty of $18,224 under section 6662(a). While residing in California, petitioner timely sought redetermination of the deficiency in this Court.

The case was calendared for trial in Los Angeles, California, on April 20, 2015. Prior to the trial date, the parties reached a basis of settlement. On April 10, 2015, the parties filed with the Court a stipulation of settled issues that was signed by petitioner and by counsel for respondent. This stipulation stated that it "resolves all the issues before the Court" and expressed the parties' understanding

[*4] that "this stipulation of settled issues will be given full effect by the Court when it enters its Decision in this case."

The stipulation of settled issues involved mutual concessions.  Petitioner agreed that he had unreported wage income of $5,571; that he had no distinct Schedule C business; that the income and expense items reported on his Schedule C should be transferred to his Schedule E business, thus eliminating the reported Schedule C loss of $43,434; and that he was liable for an accuracy-related penalty. Respondent conceded that petitioner had Schedule E flow-through income from HBC of only $84,626 (as opposed to $290,703 as determined in the notice of deficiency) and conceded that petitioner was not liable for any addition to tax under section 6651(a)(1).

At the calendar call there was no appearance by or on behalf of petitioner. Counsel for respondent appeared, explained that it would take some time to obtain tax computations, and requested 60 days to file signed decision documents.  The Court ordered that executed decision documents be submitted by June 19, 2015.

On June 16, 2015, respondent filed a motion for entry of decision.  Respondent's counsel represented that he had obtained tax computations consistent with the parties' agreement as set forth in the stipulation of settled issues; that he had prepared a decision document reflecting these tax computations; and that he had

[*5] sent the computations and draft decision document to petitioner for review. Petitioner, who was being assisted by an accountant not admitted to practice before this Court, disagreed with the computations and declined to sign the decision document.

On June 17, 2015, we ordered petitioner to file a response to respondent's motion for entry of decision. We informed petitioner that if he "disagrees with the tax computations attached to respondent's Motion then he shall specify, in detail, each item that he believes to be incorrect and shall provide the Court with what he believes to be the correct tax computations." Petitioner responded on July 21, contending that respondent's computations were erroneous because $50,141 of income was being counted twice.

In a subsequent filing, which was accompanied by a declaration from his accountant, petitioner explained that the $50,141 of alleged "duplicate income" represents the sum of $43,434 and $6,707. The first number represents the net "Schedule C Adjustments" shown on line 7 of respondent's Form 5278, Statement of Income Tax Changes: gross receipts of $59,491 minus claimed deductions of $102,925 = ($43,434). This number adds back to petitioner's income the loss originally reported on his Schedule C, consistently with the parties' agreement that all Schedule C items of income and expense should have been reported instead on

**[*6]** Schedule E.  The second number, $6,707, appears on line 9 of respondent's Form 5278 as the taxable income shown on petitioner's 2010 return as filed.

Discussion

Petitioner first contends that there was no "meeting of the minds" regarding the settlement.  According to petitioner, the tax computation that would result from the stipulation of settled issues was "one of the most essential aspects of the settlement."  Because there allegedly was "no agreement as to the essential terms of the settlement," petitioner asserts that "there was no objective manifestation of mutual assent or 'meeting of the minds'" and hence that "no settlement was reached."

We disagree.  The stipulation of settled issues was a binding contract involving mutual concessions, and it finally resolved all substantive tax issues in this case.  Disagreement about the tax computations resulting from the settlement does not relieve either party of the concessions he made in exchange for the other party's concessions.

"A controversy before this Court may be settled by agreement of the parties."  Dorchester Indus. Inc. v. Commissioner, 108 T.C. 320, 329 (1997), aff'd, 208 F.3d 205 (3d Cir. 2000).  "A settlement is a contract and, consequently, general principles of contract law determine whether a settlement has been

**[\*7]** reached." Id. at 330 (quoting Manko v. Commissioner, T.C. Memo. 1995-10, 69 T.C.M. (CCH) 1636, 1638); Robbins Tire & Rubber Co. v. Commissioner, 52 T.C. 420, 435-436 (1969), supplemented by 53 T.C. 275 (1969). "A prerequisite to the formation of a contract is an objective manifestation of mutual assent to its essential terms," which generally requires an offer and an acceptance. Dorchester Indus. Inc., 108 T.C. at 330 (quoting Manko, 69 T.C.M. (CCH) at 1638-1639); FPL Group, Inc. v. Commissioner, T.C. Memo. 2008-144, 95 T.C.M. (CCH) 1562, 1566-1567 (citing Dorchester Indus. Inc., 108 T.C. at 330).

In the Tax Court, concessions, compromises, and settlements can be memorialized in various ways, including (as here) by the parties' execution of a stipulation of settled issues. "[A] settlement stipulation is in all essential characteristics a mutual contract by which each party grants to the other a concession of some rights as a consideration for those secured and the settlement stipulation is entitled to all of the sanctity of any other contract." Saigh v. Commissioner, 26 T.C. 171, 177 (1956); Applestein v. Commissioner, T.C. Memo. 1989-42, 56 T.C.M. (CCH) 1169, 1170 (quoting Saigh, 26 T.C. at 177). The agreement manifested by a stipulation of settled issues will not be set aside except as necessary to prevent "manifest injustice," e.g., in the case of fraud or material misrepresentation of fact. See Rakosi v. Commissioner, T.C. Memo. 1991-630, 62 T.C.M. (CCH) 1563,

[*8] 1565; Applestein, 56 T.C.M. (CCH) at 1170. "The mere fact that one party unilaterally miscalculated the amount of taxes that would be owed under the agreement is no basis for relieving the party of the terms of the agreement." Applestein, 56 T.C.M. (CCH) at 1170; accord Stamm Int'l Corp. v. Commissioner, 90 T.C. 315, 320 (1988).

Where a stipulation of settlement resolves all issues in the case, as the parties' stipulation did here, the parties are expected to agree on the tax computation resulting from the settlement and embody that computation in a decision document for entry by the Court. When one party objects to a decision document tendered by the other, "[o]ur role * * * is to determine whether the proposed decision document is in accord with the settlement stipulation executed by the parties." Rakosi, 62 T.C.M. (CCH) at 1565. "[I]f the terms of the settlement agreement are clear, it should be enforced even if one of the parties miscalculated the amount of taxes resulting therefrom." Ibid.; accord Stamm Int'l Corp., 90 T.C. at 320-321, 325; Applestein, 56 T.C.M. (CCH) at 1170.

Parties to Tax Court litigation routinely settle or concede issues at a time when they do not (or cannot) know the exact tax computation that will result from their concessions. Parties may execute a partial stipulation covering some of the issues in a case, reserving the remaining issues for trial. Or a party may unilateral-

[*9] ly concede an issue at trial or in post-trial briefs. The fact that the parties have not yet agreed upon the ultimate tax consequences does not render such concessions or stipulations any less binding.

Rule 155, captioned "Computation by Parties for Entry of Decision," furnishes a useful analogy. This Rule typically comes into play where each party has prevailed on one or more issues in the case, yielding what might be called a "split decision." Under these circumstances, the Court, after issuing its opinion, "withhold[s] entry of its decision for the purpose of permitting the parties to submit computations pursuant to the Court's determination of the issues, showing the correct amount to be included in the decision." Rule 155(a).

When the parties submit a computation for entry of decision under Rule 155, some of the issues may have been tried and resolved by the Court's opinion, and other issues may have been resolved by concession, by dispositive order, or by stipulation of partial settlement. If the parties disagree about the proper tax computation resulting from resolution of all these issues, the Court affords them an opportunity to express their views; in the Court's discretion, this may include oral argument. See Rule 155(b). But such argument is limited to "the correct computation"; this Rule "is not to be regarded as affording an opportunity for retrial" or for retraction of concessions or stipulations previously made. See id. para. (c).

**[\*10]** Whenever parties make concessions, by stipulation or otherwise, in a case that ultimately requires a Rule 155 computation, they will necessarily have made those concessions at a time when the ultimate tax liability generated by their concessions may not be known. If the parties in their respective Rule 155 computations disagree about the amount of tax ultimately due, the Court, after considering the parties' arguments, "will determine the correct amount and will enter its decision accordingly." Rule 155(b). In short, there is no requirement in a Rule 155 case, or in any other case, that the parties have reached agreement on the ultimate tax computation as a precondition to making concessions or executing partial or complete settlements that are binding as to the resolution of the issues thus resolved.[2]

---

[2]In Shah v. Commissioner, 790 F.3d 767 (7th Cir. 2015), the parties had executed a stipulation of settled issues and subsequently failed to reach agreement on the proper tax computation. The U.S. Court of Appeals for the Seventh Circuit reversed an order of this Court granting the Commissioner's motion for entry of decision and remanded for trial to determine the correct tax liability. We find that case to be factually distinguishable from this one. In concluding that "the Tax Court should not have entered a judgment adopting the disputed deficiency calculations," the Court of Appeals relied on the facts that the taxpayer husband had been diagnosed with serious illness; that he was "sick and mentally distressed" and could no longer "understand mathematical calculations"; that the taxpayer wife "did not understand the case because she was never involved in tax return preparation"; and that the Commissioner's counsel had acknowledged errors in the initial tax computations and, in a letter to the taxpayers, had made ambiguous statements about the finality of the settlement. Id. at 769. In the instant case, by

(continued...)

**[\*11]** Here, we find that the parties did have a meeting of the minds concerning

resolution of all substantive tax issues presented by this case.  The stipulation of

settled issues included significant concessions by each party.  By executing the

stipulation, the parties explicitly "agree[d] to the following [adjustments]" and

stated that these adjustments "resolve[d] all the issues before the Court."  They

unambiguously stated in their agreement "that this stipulation of settled issues will

be given full effect by the Court when it enters its Decision in this case."

Because the parties have executed a binding agreement as to how all sub-

stantive issues in this case are to be resolved, our task is to determine whether the

---

[2](...continued)
contrast, petitioner is acting under no incapacity; he has been assisted at all times
by an experienced accountant; and he has clearly identified the computational
errors he believed to exist, thus enabling this Court to determine the correct tax
liability without the need for trial or oral argument.  We note, however, that the
<u>Shah</u> opinion may have misapprehended the import of our Rules and case law in
surmising that, "when the Stipulation of Settled Issues was submitted to the Tax
Court, the parties were still negotiating with the expectation of soon arriving at a
settlement."  <u>Id.</u> at 771.  Under well-established case law, a stipulation of settled
issues executed by both parties is itself a settlement; it constitutes a binding
contract that finally resolves the substantive tax issues covered by the agreement,
and the Court will enforce that settlement in the absence of fraud, misrepresenta-
tion of material facts, or similar circumstances.  <u>See</u> <u>supra</u> pp. 7-9.  Since the par-
ties in this case have reached a binding settlement resolving all tax issues present-
ed, our role in addressing respondent's motion for entry of decision, like our role
in addressing unagreed tax computations in a Rule 155 context, is to determine the
correct tax computation that flows from the manner in which the parties have
resolved those issues, whether they have agreed on the tax computation or not.

[*12] decision document proposed by respondent in his motion for entry of decision "is in accord with the settlement stipulation executed by the parties." Rakosi, 62 T.C.M. (CCH) at 1565. We conclude that it is.

The sole challenge petitioner makes to the proposed decision document concerns the $50,141 of alleged "duplicate income." Petitioner expresses his belief that "the extra $50,141 [shown] as taxable income on the [IRS] report was duplicate income as this income was already being accounted for through the Corporation," viz., through the Schedule E adjustments relating to HBC. As noted earlier, the $50,141 to which petitioner refers represents the sum of $43,434 and $6,707.

The first number represents the net "Schedule C Adjustments" shown on line 7 of respondent's Form 5278: gross receipts of $59,491 minus claimed deductions of $102,925 = ($43,434). This component of respondent's computations faithfully implements the parties' agreement and involves no double counting. In paragraph 6 of the stipulation of settled issues, the parties agreed that "petitioner did not receive taxable income reported as Schedule C gross receipts in the amount of $59,491 for taxable year 2010." And in paragraphs 2 through 5 of that stipulation, the parties agreed that petitioner is not entitled to Schedule C deductions in the aggregate amount of $102,925 for taxable year 2010.

[*13] The Schedule C Adjustments shown on respondent's Form 5278 precisely track the stipulation of settled issues and correctly add back to petitioner's 2010 gross income the net Schedule C loss that the parties agreed should be disallowed, viz., $43,434. In effect, that loss was allowed instead on Schedule E when the gross receipts and allowable expenses erroneously reported on Schedule C were folded into HBC's income. If the loss were not disallowed on Schedule C, it would in effect be allowed twice.

The adjustment to Schedule E income shown on respondent's Form 5278, or $84,626, is also correct. This precisely tracks paragraph 1 of the stipulation of settled issues, in which the parties agreed that petitioner "failed to report Schedule E flow-through income in the amount of $84,626 from HBC * * * for the 2010 tax year." This number represents a significant concession by respondent; in the notice of deficiency, respondent had determined that petitioner for 2010 failed to report Schedule E income of $290,703 from HBC.

The other component of the $50,141 to which petitioner objects is the $6,707 number appearing on line 9 of respondent's Form 5278 as the "taxable income shown on return."[3] In order to determine the tax liability flowing from the

---

[3]On September 14, 2015, respondent filed with the Court copies of petitioner's certified Form 4340, Certificate of Assessments, Payments, and Other

(continued...)

**[\*14]** parties' agreement, it is necessary to add, to the taxable income petitioner originally reported, or $6,707, the agreed-upon adjustments to his taxable income. Those agreed-upon adjustments total $133,632, comprising unreported wages of $5,572, unreported Schedule E income of $84,626, and the disallowed Schedule C loss of $43,434. Under the parties' settlement, therefore, petitioner's corrected taxable income for 2010 is $140,339.

Petitioner does not challenge respondent's determination that the tax liability arising for the taxable year 2010 on taxable income of $140,339 is $33,004. Because the tax shown on petitioner's return was only $673, respondent has correctly determined a deficiency of $32,331. This figure represents significant concessions by respondent since the deficiency determined in the notice of deficiency was $98,761.

In an order dated September 1, 2015, we informed petitioner that any further objections to respondent's computations should be submitted on or before October 2, 2015. Petitioner has filed no further objection or response. Because we are satisfied with respondent's tax computations and because petitioner has

---

[3](...continued)
Specified Matters, a three-year CDE transcript, and a certified account transcript for the 2010 tax year, all of which confirm that petitioner reported taxable income of $6,707 on his 2010 return as originally filed.

**[*15]** raised no valid objections to them, we conclude that further argument is unnecessary. Cf. Rule 155(b) (where parties submit computations that "differ as to the amount to be entered as the decision of the Court, then the parties may, at the Court's discretion, be afforded the opportunity to be heard in argument thereon").

In sum, we conclude that the parties had a meeting of the minds concerning resolution of the substantive issues and that their stipulation of settled issues constituted a valid and binding contract. That is so even though the parties, when executing the settlement stipulation, may not yet have calculated, or may have misapprehended, the tax liability that ultimately would flow from their settlement. We further conclude that the tax computations set forth in respondent's motion for entry of decision accurately implement the agreement embodied in the parties' stipulation of settled issues and that these computations are in all respects correct.

To effect the foregoing,

An appropriate order and decision will be entered.