T.C. Memo. 2000-374

UNITED STATES TAX COURT

NESTLE HOLDINGS, INC., ON BEHALF OF ITSELF AND CONSOLIDATED
SUBSIDIARIES, AND AS THE SUCCESSOR IN INTEREST TO NESTLE
ENTERPRISES, INC. AND CONSOLIDATED SUBSIDIARIES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 21562-90.                    Filed December 12, 2000.

Joseph R. Goeke, Thomas Kittle-Kamp, and John T. Hildy, for
petitioner.

Theodore J. Kletnick, Paulette Segal, and Oleida Mendiburt,
for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

VASQUEZ, Judge:  This matter is before the Court on the

_____

    [*]  This Opinion supplements the Court's Memorandum Opinion
in Nestle Holdings, Inc. v. Commissioner, T.C. Memo. 1995-441,
affd. in part, revd. and remanded in part 152 F.3d 83 (2d Cir.
1998).

parties' disputed computations under Rule 155 of the decision to be entered for Nestle Holding Inc.'s (petitioner) 1983, 1984, and 1985 tax years.[1]  The ruling in this opinion relates solely to petitioner's 1985 tax year.[2]  The issue presented to us is whether the parties agreed in two settlement agreements on the method of computing the deficiency and/or overpayment for the 1985 tax year.  In the event that respondent's interpretation of the settlement agreements is rejected by the Court, respondent concedes that petitioner is entitled to a refund of $36,441,904.  See Respondent's Additional Memorandum of Law.

Background

<u>1995 Tax Court Opinion</u>

Respondent determined deficiencies in petitioner's Federal income taxes as follows:

| Taxable Year Ending | Amount |
|---|---|
| Dec. 31, 1983 | $38,934,552 |
| Dec. 29, 1984 | 21,764,946 |
| Dec. 28, 1985 | 285,591,539 |

On September 14, 1995, after the settlement of numerous issues by the parties, the Court rendered an opinion (1995

---

[1]  Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the years in issue (or the Internal Revenue Code in effect for years in which carrybacks were generated).

[2]  Although we discuss petitioner's 1983 and 1984 tax years herein, we dispose of those tax years separately in an accompanying order.

opinion) with regard to remaining issues in the case.  See <u>Nestle</u>
<u>Holdings, Inc. v. Commissioner</u>, T.C. Memo. 1995-441, affd. in
part, revd. and remanded in part 152 F.3d 83 (2d Cir. 1998).  In
the 1995 opinion, the Court (1) held that petitioner and
Carnation Co. (Carnation) were entitled to interest deductions of
$131,739,791,[3] (2) established the fair market value of various
Carnation assets, and (3) concluded that Carnation (i.e.,
petitioner) had to recognize capital gains on the sale of those
assets to Nestle S.A., a foreign entity.  The Court ordered the
parties to submit computations under Rule 155.

<u>1995 Advance Tax Payments</u>

On December 15, 1995, after the release of the 1995 opinion,
but before the Court entered a decision, petitioner paid
respondent the following amounts (advance tax payments) on the
deficiencies as anticipated by petitioner for the tax years in
issue:

| Taxable Year Ending | Advance Tax Payments |
| --- | --- |
| Dec. 31, 1983 | $6,774,252 |
| Dec. 29, 1984 | 31,222,100 |
| Dec. 28, 1985 | 114,964,176 |

<u>Initial Tentative Refunds and 1996 Motion To Strike</u>

On August 7, 1996, a stipulation by the parties with regard

---

[3]  During 1985, Carnation was acquired by and became a
subsidiary of Nestle Enterprises, Inc., petitioner's predecessor.
For 1985, Nestle Enterprises, Inc., and Carnation filed a
consolidated return.  Petitioner has filed its petition as a
successor in interest to Nestle Enterprises, Inc.

to the Rule 155 computations (1996 stipulation) was filed.  In order to understand the reason for this stipulation, we describe various actions previously undertaken by petitioner.  During the litigation, petitioner filed with respondent Form 1139, Corporation Application for Tentative Refund, requesting tentative refunds attributable to carrying back a variety of net operating losses (NOL's), business credits, and net capital losses generated in post-1985 tax years to the 1983 and 1984 tax years (initial tentative refunds).  See sec. 6411.  Respondent allowed those refunds.

On July 26, 1996, before the parties filed their Rule 155 computations and proposed decision documents, petitioner filed a motion to strike paragraphs 4(cw) and 5(bt)(i) of its petition.  Through the motion, petitioner sought to clarify that the amounts carried back to the 1983 and 1984 tax years (and any resulting adjustments) were not in issue before the Court.  See infra 1996 stipulation.

Respondent did not object to the motion.  The Court granted petitioner's motion.  For the purposes of this opinion, we interpret the "not in issue" terminology to mean that petitioner did not seek to have this Court establish whether the carrybacks which led to the initial tentative refunds were

properly allowed by respondent.[4]

1996 Stipulation and Tax Court Decision

The relevant portions of the 1996 stipulation follow:

　　1.　Respondent may assess the deficiencies determined to be due pursuant to the foregoing decision for the taxable [years] ended December 31, 1983, December 29, 1984, and December 28, 1985.　The deficiencies shown in the foregoing decision for the 1983 and 1984 taxable years and the overpayment shown in the foregoing decision for the 1985 taxable year were determined without giving Petitioner credit for carrybacks, including carrybacks that were tentatively allowed under the provisions of I.R.C. sec. 6411, from taxable years after December 28, 1985, which carrybacks are not in issue in this case.　Further, the amounts of the net tax assessed and paid and the deficiencies shown in the foregoing decision for the 1983 and 1984 taxable years were determined after reducing the tax assessed and paid for those years by all amounts that were refunded or credited in connection with the aforementioned carrybacks.　The reflection in the decision of these refunds is not a substantive determination of whether the carrybacks are allowable and does not put the carrybacks in issue.

　　　*　　*　　*　　*　　*　　*　　*

　　9.　It is further stipulated that business credit carrybacks, net operating loss and capital loss carrybacks and the effect of such carrybacks, and other similar tax attributes defined in I.R.C. secs. 6511(d)(2) and (d)(4) arising with respect to the Petitioner's taxable years beginning after December 28, 1985, were not at issue in T.C. Docket No. 21562-90 and may be the subject of a claim for refund attributable to such carrybacks and the effect of such carrybacks into Petitioner's taxable years ended December 31, 1983, December 29, 1984, and December 28, 1985, * * *. [Emphasis added.]

---

[4] As explained infra in the 1996 stipulation, the parties agreed that the decision of the Court would not serve as res judicata with regard to this issue.

Pursuant to the record and the 1996 stipulation, on August 7, 1996, the Court also entered a decision (1996 decision) redetermining the deficiency determinations as follows:

| Taxable Year Ending | Deficiency |
| --- | --- |
| Dec. 31, 1983 | $6,780,478 |
| Dec. 29, 1984 | 33,217,385 |
| Dec. 28, 1985 | 86,323,660 |

Pursuant to the Court's refund jurisdiction under section 6512(b)(1), the Court also concluded in the 1996 decision that as to the 1985 tax year, petitioner had an overpayment of $28,640,516[5] in addition to the deficiency of $86,323,660.[6]

Subsequent Tentative Refunds

On September 9, 1996, petitioner submitted to respondent another Form 1139 seeking tentative refunds (subsequent tentative refunds) of $556,698, $14,045,138, and $49,907,010 for the 1983, 1984, and 1985 tax years, respectively. The subsequent tentative refund for 1985 resulted from carrying back NOL's generated in

---

[5] The overpayment of $28,640,516 resulted from the difference between petitioner's $86,651,835 tax liability (consisting of a $328,175 tax shown on petitioner's tax return plus the $86,323,660 deficiency established by the Court) and the combination of a $328,175 payment made with petitioner's 1985 tax return and the $114,964,176 advance tax payment for the 1985 tax year.

[6] Because respondent did not assess the advance tax payments as a deficiency until Dec. 30, 1996, they were not part of the deficiency computations. See sec. 6211(a).

the 1995 tax year to 1985.[7]  Furthermore, when the NOL's were
carried back to 1985, business credits that initially offset the
1985 tax liability became eligible to be applied to the 1983 and
1984 tax years, creating refunds in those years.[8]  Specifically,
the NOL's were derived from additional interest and State taxes
resulting from the litigation of the instant case.  Respondent
allowed the subsequent tentative refunds for 1983, 1984, and
1985.

Appeal of 1995 Opinion

In late 1996, petitioner appealed the Court's valuation of
the Carnation assets and the corresponding capital gains issue to
the U.S. Court of Appeals for the Second Circuit.  On December
30, 1996, respondent assessed the deficiencies redetermined by
the Court in the 1996 decision.[9]  On July 31, 1998, the Court of

---

[7]  Sec. 172(b)(1)(C) provides that if a taxpayer has a
"specified liability loss", the specified liability loss can
serve as a carryback to the preceding 10 taxable years.  The
definition of a specified liability loss, however, has materially
changed between 1995 (the year in which the NOL carrybacks were
generated) and today.  See sec. 172(f) before and after amendment
by the Omnibus Consolidated and Emergency Supplemental
Appropriations Act, 1999, Pub. L. 105-277, sec. 3004(a), 112
Stat. 2681-905 (which applies to NOL's arising in taxable years
ending after Oct. 21, 1998).

[8]  A part of the refunds for 1983 and 1984 resulted from
carrying back business credits generated in 1986 and 1987.

[9]  The advance tax payments for 1983 and 1984 did not cover
the entire deficiency assessed for 1983 and 1984 by respondent
pursuant to the Court's decision.  In order to cover the
shortfall, respondent credited $6,226 and $1,995,285 to

(continued...)

Appeals affirmed this Court's holding that petitioner had to recognize capital gains on the sale of the Carnation assets but reversed and remanded the Court's 1995 opinion with regard to the valuation of the Carnation assets.

Remand to the Tax Court and 1999 Stipulation

After the Court scheduled the case for a new trial, the parties reached a basis of settlement in 1999 as to the value of the Carnation assets (1999 stipulation).  The valuation dispute affected only the deficiency and overpayment determinations for the 1985 tax year.[10]  As part of the 1999 stipulation, the parties described the deficiency and/or overpayment computation for the 1985 tax year in their Rule 155 computations.  The parties agreed to the following:

> 1.  * * * The parties hereby stipulate that Carnation Company's basis in the trademarks was $239,500,000 and that the capital gain upon the sale of these trademarks to NSA shall be computed by reference to the foregoing basis * * *.

> 2.  The parties' stipulation in paragraph 1 of Petitioner's basis in the trademarks is for the sole purpose of resolving the remaining disputed issue in this case and has no precedential value beyond determining Carnation Company's basis in the trademarks and goodwill/going concern value.

---

[9](...continued) petitioner's 1983 and 1984 tax accounts, respectively.  Those funds came from interest overpaid by petitioner for the years in issue.

[10]  The valuation of the Carnation assets affected the amount of capital gains petitioner had to recognize for the 1985 tax year.

3.  Pursuant to T.C. Rule 155, this Court entered a decision in this case on August 7, 1996, determining a deficiency of income tax due from Petitioner for the taxable year ended December 28, 1985, in the amount of $86,323,660.  As a result of this Stipulation of Settled Issue, the foregoing <u>deficiency must be recomputed pursuant to the parties' stipulation of basis in paragraph 1</u>.  The Court's August 7, 1996 decision was accompanied by a stipulation signed by Petitioner's counsel and Respondent's counsel on July 26, 1996, and August 2, 1996, respectively.  <u>The stipulation accompanying the August 7, 1996 decision [(1996 stipulation)] controls the manner in which the income tax at issue for the 1985 taxable year will be recomputed</u>.  The parties will expeditiously submit the recomputed deficiency for the Court to enter pursuant to Rule 155.  [Emphasis added.]

For ease of reference, the Court provides a flowchart in the appendix which lists the various steps in this litigation.

<u>The Parties' Positions</u>

In the present Rule 155 computational dispute, respondent arrives at a deficiency of $8,815,210 for the 1985 tax year, while petitioner arrives at a $41,091,800 overpayment.[11]

---

[11]  Sec. 6211(a) defines a deficiency as the amount by which the taxpayer's tax liability exceeds the excess of:

   (1) the sum of

      (A) the amount shown as the tax by the taxpayer upon his return, * * * plus

      (B) the amounts previously assessed (or collected without assessment) as a deficiency, over--

   (2) the amount of rebates, as defined in subsection (b)(2), made.

In describing their respective positions, the parties
(continued...)

Their deficiency and overpayment computations follow below:

Respondent's 1985
Deficiency Computation[1]

| | | |
|---|---|---|
| Tax liability | | $45,560,035 |
| Tax on return | $328,175 | |
| Amounts assessed as a deficiency | 86,323,660 | |
| Tax assessed and paid | [2]86,651,835 | |
| -Reductions | (49,907,010) | |
| -Net tax assessed and paid | | (36,744,825) |
| Deficiency | | 8,815,210 |

Petitioner's 1985
Overpayment Computation[1]

| | |
|---|---|
| Tax assessed and paid | [2]$86,651,835 |
| -Tax liability | (45,560,035) |
| Overpayment | 41,091,800 |

[1] We have slightly altered respondent's and petitioner's presentations for comparison purposes.

[2] Petitioner made a $328,175 payment with its 1985 tax return and a $114,964,176 payment in anticipation of our 1996 decision. Petitioner's tax assessed and paid of $86,323,660 is net of $28,640,516 returned to petitioner by respondent (i.e., $328,175 + $114,964,176 - $28,640,516).

The parties agree that petitioner's tax liability for 1985 equals $45,560,035, but they interpret the 1996 and 1999 stipulations differently in determining the deficiency and/or overpayment for 1985. Although the NOL carrybacks, which

[11](...continued)
characterize the sum of the amount shown as a tax on the return and the amounts previously assessed as a deficiency as the "tax assessed and paid" by petitioner. We use the same terminology in this opinion as a shorthand reference to the sec. 6211(a)(1) figure. Using a computational format, a deficiency may therefore be expressed as follows:

Tax liability - (tax assessed and paid - rebates).

resulted in the subsequent tentative refund for 1985, are not to be taken into account by the Court in redetermining the 1985 tax liability,[12] respondent argues that the 1996 and 1999 stipulations provide for the tax assessed and paid for the 1985 tax year to be reduced by the subsequent tentative refund.[13]

Respondent first contends that the 1999 stipulation provides that the 1996 stipulation "'controls the manner in which the income tax at issue for the 1985 taxable year will be computed.'" Respondent then argues that because the parties agreed in the 1996 stipulation that the initial tentative refunds for the 1983 and 1984 tax years would be treated as a reduction to the tax assessed and paid, the subsequent tentative refund for the 1985 tax year should be treated in the same fashion.

Petitioner agrees that the 1999 stipulation directs the Court to consider the language of the 1996 stipulation. Petitioner, however, argues in a memorandum that the 1996 stipulation says "nothing at all" about whether the subsequent tentative refund is to be treated as a reduction to the tax assessed and paid for 1985. Petitioner further argues that the "absence of any such language for 1985 is not only conspicuous,

_____

[12] Both parties agree that the NOL carrybacks, which resulted in the subsequent tentative refunds, are also not in issue before the Court.

[13] Our use of the singular form of the term "subsequent tentative refunds" refers to the subsequent tentative refund for the 1985 tax year.

but dispositive:  it shows that the parties meant to treat 1985 differently from 1983 and 1984."[14]

Discussion

I.   Settlement Agreement Issue

A.  Contract Law

This Court applies general principles of contract law to compromises and settlements of Federal tax cases.  We stated in Robbins Tire & Rubber Co. v. Commissioner, 52 T.C. 420, 435-436 (1969), that "a compromise is a contract and thus is a proper subject of judicial interpretation as to its meaning, in light of the language used and the circumstances surrounding its execution."  See also Brink v. Commissioner, 39 T.C. 602, 606 (1962), affd. 328 F.2d 622 (6th Cir. 1964); Saigh v. Commissioner, 26 T.C. 171, 177 (1956); Davis v. Commissioner, 46 B.T.A. 663, 671 (1942); Himmelwright v. Commissioner, T.C. Memo. 1988-114.  Absent wrongful misleading conduct or mutual mistake, we will enforce a stipulation of settled issues in accordance with our interpretation of its written terms.  See Stamm Intl.

---

[14]  In addition, petitioner also argues that respondent's own Internal Revenue Manual instructs its employees not to take into account tentative refunds (resulting from NOL carrybacks not in issue) in the computation of a deficiency.  See Internal Revenue Manual, Part XXXV-Chief Counsel Directives Manual Exhibit (35)(10)00-28 (July 11, 1991).  In response, respondent only argues that "regardless of the interpretation" of the Internal Revenue Manual, statements "issued to guide the [Internal Revenue] Service's employees in performing their duties have a directory nature and do not bind Respondent."

Corp. v. Commissioner, 90 T.C. 315, 322 (1988); Korangy v. Commissioner, T.C. Memo. 1989-2, affd. 893 F.2d 69 (4th Cir. 1990).  However, we will not force a settlement on the parties where no settlement was intended.  See Autera v. Robinson, 419 F.2d 1197 (D.C. Cir. 1969).

B.  Analysis of Settlement Agreements

The issue before us is whether the subsequent tentative refund should be subtracted from the tax assessed and paid for 1985, the result of which is a deficiency.  When we examine the language used in the 1999 stipulation, we find that it does not specifically provide for the tax assessed and paid for the 1985 year to be reduced by the subsequent tentative refund.  The relevant portion of the 1999 stipulation does state that the "income tax at issue" for the 1985 year should be computed according to the 1996 stipulation.[15]

The 1996 stipulation provides that as to the 1983, 1984, and 1985 tax years, petitioner should not be given credit for carrybacks which are not in issue (i.e., the carrybacks should not be considered in determining taxable income and the corresponding tax liability).  The 1996 stipulation also states that the 1983 and 1984 tax assessed and paid should be reduced by

_____

[15]  We believe that the reference in par. 3 of the 1999 stipulation indicating that the deficiency be computed according to par. 1 refers to par. 1 of the 1999 stipulation and not the 1996 stipulation.

tentative refunds.  In computing the deficiency and overpayment for 1985, however, the parties did not address in the 1996 stipulation whether a tentative refund for 1985 was to be treated as a reduction to the tax assessed and paid for 1985.

Although it is evident from both stipulations that the 1985 tax liability should be computed without considering the carrybacks not in issue, it is unclear from the stipulations whether the parties also meant for a tentative refund for 1985 to reduce the tax assessed and paid.  Because the parties have not clearly set forth the substance of their agreement and since we cannot discern the intent of the parties from the ambiguous language of the stipulations, we will not construe an agreement to exist with regard to the disputed issue.

Having concluded that the 1996 and 1999 stipulations do not address the issue of whether to treat the subsequent tentative refund as a reduction to the tax assessed and paid, we would normally look to relevant statutory and case law to determine how to treat the subsequent tentative refund in the deficiency computation.  However, because respondent has conceded an overpayment of $36,441,904 in the event that the Court does not sustain his interpretation of the settlement agreements, we hold that petitioner is entitled to a refund of $36,441,904.[16]

_____

[16]  Petitioner agrees that the cash or credit refund should be $36,441,904.

## II.  Decision Document

Additionally, respondent requests that if the Court concludes that petitioner is entitled to a refund, the Court include language in the decision document protecting respondent's right to challenge the validity of the carrybacks that resulted in the subsequent tentative refund for 1985.  Respondent's request arises from an unpublished opinion of the U.S. Court of Appeals for the Eighth Circuit that upheld a U.S. District Court's decision that the United States was barred under res judicata principles from subsequently recovering a tentative refund pursuant to section 6213(b)(3).  See Bradley v. United States, 106 F.3d 405 (8th Cir. 1997), affg. Civil No. 3-94-1514 (D. Minn., Jan. 30, 1996).  Because petitioner does not object to the language itself,[17] the parties are directed to include the language in a stipulation drafted by the parties to accompany the decision document.

To the extent not herein discussed, we have considered the parties' other arguments and found them to be irrelevant or without merit.

---

[17]  Petitioner objects only to the language being placed in the decision document itself instead of in a stipulation to the decision document.

To reflect the foregoing,

<u>An appropriate order directing the parties to file revised computations will be issued</u>.

Appendix:  Flowchart Summarizing Litigation

