T.C. Memo. 2004-65

UNITED STATES TAX COURT

PHILLIP AND GLADIES AARON, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9879-01L.                    Filed March 12, 2004.

Phillip and Gladies Aaron, pro sese.

Catherine L. Campbell, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  This case was commenced in response to a

Notice of Determination Concerning Collection Action(s) Under

Sections 6320[1] and 6330.  The issue is whether respondent may

_____

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
Court Rules of Practice and Procedure.  All amounts are rounded
to the nearest dollar.

proceed with collection of petitioners' 1997 and 1998 income tax liabilities.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, stipulation of settled issues, and attached exhibits are incorporated herein by this reference. At the time they filed the petition, petitioners resided in Bellevue, Washington.

At the time of trial, Phillip Aaron (petitioner) and Gladies Aaron had been married for 35 years. Mrs. Aaron works for the State of Washington as a social worker. Petitioner is an attorney in private practice and also owns interests in various closely held corporations.

In the latter part of 1996, petitioner's health declined. In the beginning of 1997, petitioner was diagnosed with colon cancer and underwent surgery immediately. After the surgery, petitioner underwent chemotherapy treatment until approximately December 1997.

On April 30, 1998, petitioner returned to the practice of law part time.

BP Concessions, Inc.

Petitioner and Bernie Foster formed BP Concessions, Inc. (BP Concessions), to sell goods and duty-free items at the Portland, Oregon, airport. Mr. Foster and petitioner each held 50 percent

of the shares of BP Concessions.  On or about October 1, 1988, BP Concessions elected to become an S corporation pursuant to section 1362(a).

In December 1996, petitioner and Mr. Foster agreed in a board meeting to terminate BP Concessions' S corporation status by revoking the S corporation election.  They decided to revoke the S corporation election on account of an anticipated and substantial distributive share of income based on "a lowering of the cost of goods which was going to result in an increase from prior years" to the shareholders.

Petitioner was responsible for revoking the election.  For the revocation to be effective for 1997, petitioner had to revoke the S corporation election by March 17, 1997.  Petitioner failed to revoke the S corporation election by March 17, 1997, because he was ill with cancer.  Indeed, the parties stipulated that BP Concessions was an S corporation during the years 1997 and 1998.  As of March 13, 2003, the date of the trial in this case, petitioner had not properly revoked the S corporation election for BP Concessions.

Keith Meyers, the accountant who prepared BP Concessions' tax return for 1997, was unaware of the shareholders' desire to terminate the S corporation election.  On October 20, 1998, petitioner signed the Form 1120S, U.S. Income Tax Return for an S Corporation, for 1997.  The Schedule K-1, Shareholder's Share of

Income, Credits, Deductions, etc., reported $447,653 as petitioner's share of the income from BP Concessions for 1997.

Petitioners' Tax Returns

On their Form 1040, U.S. Individual Income Tax Return, for 1997, petitioners reported a Schedule K-1 distributive share of $447,653 of nonpassive income from BP Concessions and a total tax of $103,708.[2]  On their Form 1040 for 1998, petitioners reported a distributive share of $21,336 of nonpassive income from Schedule K-1 from BP Concessions and a total tax of $35,909. They sought a refund of $5,825.  On March 29, 2000, petitioners signed both returns.

Petitioner decided to report the distributive share of income from BP Concessions on his Form 1040 for 1997 so that he would not be viewed as underreporting his income.  Petitioner intended to amend his return and "correct the situation at a

_____

[2]  On their 1997 return, petitioners reported that they had overpaid their taxes by $217,952 and sought a refund of $192,952 and application of $25,000 to their 1998 estimated taxes.  This alleged overpayment was based on petitioners' belief that the Internal Revenue Service (IRS) owed them a refund of $300,000 plus interest.  The alleged refund arises from a prior dispute with the IRS concerning petitioner's personal liability on unpaid employment taxes for his corporation, National Waste Co., Inc. Petitioners claimed a refund on their 1997 return of $300,000 plus interest on the basis of their allegation that the IRS sold their personal residence at below market value when it foreclosed on their house to collect the unpaid employment taxes. Petitioners never filed a claim for refund with a U.S. District Court.

later date". Petitioner did not believe that this course of action would result in any problems.

The Internal Revenue Service (IRS) did not issue petitioners a statutory notice of deficiency for 1997 or 1998.

IRS Collection Efforts

The IRS concluded that petitioners' individual tax return for 1997 contained multiple mathematical errors. On June 10, 2000, after correcting the mathematical errors, the IRS assessed a tax liability of $111,636.

The IRS concluded that petitioners' individual tax return for 1998 contained multiple mathematical errors. On July 17, 2000, after correcting the mathematical errors, the IRS assessed a tax liability of $34,890.

Before collection proceedings, petitioner and Revenue Officer Steve Lerner corresponded regarding petitioners' unpaid taxes and refund claims for 1997 and 1998.

On November 16, 2000, Revenue Officer Lerner issued a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing. On December 6, 2000, Revenue Officer Lerner advised petitioners that he would delay filing the notice of Federal tax lien until December 28, 2000, so that petitioners could file amended income tax returns for 1997 and 1998. On December 27, 2000, Revenue Officer Lerner issued a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320.

On January 29, 2001, petitioners, through their attorney Deborah Jaffe,[3] filed a Form 12153, Request for a Collection Due Process Hearing. In their "Statement in Support of Form 12153" petitioners identified three issues to be discussed at the hearing. First, petitioners disputed the amount of the tax liability set forth in the notice of Federal tax lien. The statement in support of Form 12153 stated:

> The taxpayers are in the process of determining the correct amount of their income tax liabilities for these years, and they anticipate that their actual liability will be substantially less than as set forth in the notice of Federal tax lien. While the taxpayers acknowledge that the liability set forth in the notice was assessed based on a 1997 return filed by the taxpayers, that return as filed was incorrect, and the taxpayers had so advised the Internal Revenue Service prior to the filing of the notice of Federal tax lien.

Second, petitioners claimed that the "notice of Federal tax lien was filed despite the taxpayers' cooperation with the IRS". Third, petitioners claimed that the filing of the notice of Federal tax lien would hinder the ability of the IRS to collect the tax liabilities because potential investors would not invest in BP Concessions if a Federal tax lien was filed.

On March 20, 2001, Appeals Settlement Officer J.A. Vander Linden wrote to Ms. Jaffe regarding the Appeals process. On May 14, 2001, Ms. Jaffe proposed a settlement to Appeals Settlement Officer Vander Linden. The settlement proposed filing of

_____

[3] On Sept. 18, 2002, the Court granted Ms. Jaffe's motion to withdraw as counsel of record.

individual and corporate amended returns for 1997 and 1998 and filing of an appropriate revocation of BP Concessions' S corporation election in exchange for withdrawal of the notice of Federal tax lien.  In May 2001, petitioner gave Ms. Jaffe amended individual income tax returns but stated they were never filed. On May 22, 2001, petitioner and Mr. Foster executed an "Agreement to Change BP Concessions to a C Corporation".  The agreement stated:

> The undersigned hereby agree that at the year-end meeting in December of 1996, Phillip Aaron was charged by the Corporation with converting BP CONCESSIONS, INC. from a Sub-Chapter S Corporation to a C Corporation for the specific purpose, and in anticipation of, BP CONCESSIONS, INC., receiving income and loaning part of that income to Bernie Foster and Phillip Aaron during the year of 1997.  Phillip Aaron was responsible for changing the Corporation from a Sub-Chapter S to a C Corporation.  Phillip Aaron developed cancer and underwent chemotherapy during 1997 and, as a result, the C Corporation election was not made.  It is still the desire of BP CONCESSIONS, INC., Phillip Aaron, and Bernie Foster that BP CONCESSIONS, INC., be changed from a Sub-Chapter S Corporation to a C Corporation and that the disbursement of proceeds for 1997 be classified as a loan as they were intended to be at the time of disbursement.

Appeals Settlement Officer Vander Linden prepared a detailed Appeals case memo evaluating petitioners' appeal and recommending that it be denied.  On July 6, 2001, the IRS issued a Notice of Determination Concerning Collection Action(s) Under Sections 6320 and 6330.

Litigation

On August 8, 2001, petitioners timely filed a petition with the Court.

On the morning of the trial in this case, petitioners mailed to the IRS Ogden Service Center Forms 1040X, Amended U.S. Individual Income Tax Return, for 1997 and 1998.  The amended returns eliminated the $447,653 distributive share of income from BP Concessions for 1997 and indicated that the amount of tax owed for each year was zero.  At trial, petitioners presented no evidence regarding any spousal defenses, any challenges to the appropriateness of the collection actions, or any offers of collection alternatives.

On September 22, 2003, the parties filed a stipulation of settled issues.  This stipulation stated:

> 1.  In their petition, petitioners requested that the Court determine, inter alia, that the amounts of the assessments for petitioners' 1997 and 1998 income taxes are incorrect and are overstated because the petitioners were entitled to revoke the subchapter S election for BP Concessions, Inc. for years 1997 and 1998.

> 2.  Petitioners concede that there is no reasonable cause exception for their failure to timely revoke the subchapter S status of BP Concessions, Inc. for years 1997 and 1998.

OPINION

1.  Applicable Law

Section 6321 provides that, if any person liable to pay any tax neglects or refuses to do so after demand, the amount shall

be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.  Pursuant to section 6323, the Commissioner generally is required to file a notice of Federal tax lien with the appropriate State office for the lien to be valid against certain third parties.

After the Commissioner files a notice of lien, section 6320(a)(1) requires the Commissioner to provide notice to the taxpayer of such filing.  Additionally, under section 6320(a)(3)(B) and (b), the Commissioner must provide the taxpayer with notice of and an opportunity for an administrative review of the lien filing; i.e., a hearing.  Section 6320(b)(1) requires that the Appeals Office conduct the hearing.  Section 6320(c) incorporates section 6330(c) and certain parts of section 6330(d), which describe the procedural rules that apply to the hearing and the judicial review thereof.

At the hearing, the taxpayer may raise certain matters set forth in section 6330(c)(2), which provides, in pertinent part:

> SEC. 6330(c).  Matters Considered at Hearing.--In the case of any hearing conducted under this section--
>
>     \*    \*    \*    \*    \*    \*    \*
>
>   (2) Issues at hearing.--
>
>     (A)  In general.--The person may raise at the hearing any relevant issue relating to the unpaid tax or proposed levy, including--
>
>       (i)  appropriate spousal defenses;

(ii)  challenges to the appropriateness of collection actions; and

(iii)  offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.

(B)  Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

Pursuant to section 6330(d)(1), within 30 days of the issuance of the notice of determination, the taxpayer may appeal that determination to this Court if we have jurisdiction over the underlying tax liability.  Van Es v. Commissioner, 115 T.C. 324, 328 (2000).

Although section 6330 does not prescribe the standard of review that the Court is to apply in reviewing the Commissioner's administrative determinations, we have stated that, where the validity of the underlying tax liability is properly at issue, the Court will review the matter de novo.  Where the validity of the underlying tax liability is not properly at issue, however, the Court will review the Commissioner's administrative determination for abuse of discretion.  Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181 (2000).

- 11 -

In <u>Montgomery v. Commissioner</u>, 122 T.C. __, __ (2004) (slip op. at 2), we recently held that section 6330(c)(2)(B) permits a taxpayer to challenge the existence or amount of the tax liability reported on an original tax return when the taxpayer has not received a notice of deficiency and has not otherwise had an opportunity to dispute the tax liability in question. Pursuant to section 6330(c)(2)(A), a taxpayer may raise at the section 6330 hearing any relevant issue with regard to the Commissioner's collection activities, including spousal defenses, challenges to the appropriateness of the Commissioner's intended collection action, and alternative means of collection. <u>Sego v. Commissioner</u>, <u>supra</u> at 609; <u>Goza v. Commissioner</u>, <u>supra</u> at 180.

2. <u>Stipulation of Settled Issues</u>

After trial but before the submission of petitioner's posttrial brief, the parties filed a stipulation of settled issues that stated: "there is no reasonable cause exception for * * * [petitioners'] failure to timely revoke the subchapter S status of BP Concessions, Inc. for years 1997 and 1998". On brief, petitioner argues that his illness was a reasonable cause exception for failing to timely terminate BP Concessions' S corporation election.

A settlement stipulation is usually a compromise. "A settlement stipulation is in all essential characteristics a mutual contract by which each party grants to the other a

concession of some rights as a consideration for those secured and the settlement stipulation is entitled to all of the sanctity of any other contract." Saigh v. Commissioner, 26 T.C. 171, 177 (1956). Absent wrongful misleading conduct or mutual mistake, we will enforce a stipulation of settled issues in accordance with our interpretation of its written terms. See Stamm Intl. Corp. v. Commissioner, 90 T.C. 315, 322 (1988); Korangy v. Commissioner, T.C. Memo. 1989-2, affd. 893 F.2d 69 (4th Cir. 1990).

The stipulation was entered into fairly and freely by both parties. The stipulation of settled issues was filed after petitioner wrote a letter to the Clerk of the Court conceding respondent's position that there is no reasonable cause exception for failing to revoke BP Concessions' S corporation election. In that letter, petitioner stated that he wished to discontinue the case. The stipulation of settled issues was also filed after the Court held a telephone conference with the parties discussing this issue. Petitioner has not shown mutual mistake or misleading conduct or that he was unaware of the consequences of the stipulation.

In the petition and at trial, petitioners' only challenge to the underlying tax liability was that they were entitled to a reasonable cause exception on account of petitioner's illness. On the basis of the stipulation of settled issues, we find that

petitioner has conceded his challenge to the underlying tax liability. Accordingly, we sustain respondent's determination.

3. <u>Additional Points Raised by Petitioner</u>

Nevertheless, for the sake of completeness, we shall address additional points raised by petitioner.

A. <u>Termination of BP Concessions' S Corporation Election</u>

Petitioner argues that "Although there is no reasonable cause exception that directly excuses the petitioners' failure to timely revoke the Subchapter S Election of BP Concessions, there is no specific provision that directly indicates that a reasonable cause exception does not apply." An election to be an S corporation continues until terminated. <u>Mourad v. Commissioner</u>, 121 T.C. 1, 4 (2003). An S corporation election may be terminated: (1) By revocation of the election to be treated as an S corporation; (2) by the corporation's ceasing to be a small business corporation; or (3) where passive investment income exceeds 25 percent of gross receipts and the corporation has subchapter C earnings and profits. See sec. 1362(d); <u>Mourad v. Commissioner</u>, <u>supra</u>. The Code provides no other manner in which to terminate an S corporation election. <u>Mourad v. Commissioner</u>, <u>supra</u>.

While section 1362(b)(5) authorizes the Secretary to treat late S corporation elections as timely if the Secretary determines that there was "reasonable cause for the failure to

timely make such election", this section applies only to the election to become an S corporation. See sec. 1362(a) and (b)(5)(A). Congress provided no reasonable cause exception for termination of an S corporation election by revocation. See sec. 1362(d)(1). The regulations provide no reasonable cause exception for termination of an S corporation election by revocation.

Petitioner failed to revoke BP Concessions' S corporation election by March 17, 1997. See secs. 1362(d)(1)(C)(i), 7503. Indeed, as of the date of trial, petitioner conceded that he still had not revoked BP Concessions' S corporation election. While we are sympathetic to petitioner's medical condition during 1997 and 1998, there is no provision under section 1362(d) for a reasonable cause exception for revocation of the S corporation election. We must apply the law as written; it is up to Congress to address questions of fairness and to make improvements to the law. Metzger Trust v. Commissioner, 76 T.C. 42, 59-60 (1981), affd. 693 F.2d 459 (5th Cir. 1982).

Furthermore, the May 22, 2001, agreement between petitioner and Mr. Foster is insufficient to revoke the S corporation election for 1997 or 1998. There is no indication that the agreement was filed with the proper IRS service center. It does not include the number of shares of stock issued and outstanding. See sec. 1.1362-6(a)(3), Income Tax Regs. Additionally, it does

not comply with the requirements for obtaining shareholders' consents.  See sec. 1.1362-6(b), Income Tax Regs.

Because the S corporation election was in effect for 1997 and 1998, petitioners were required to report their distributive share of income from BP Concessions.  Petitioners reported this distributive share of income.  The IRS assessment was proper.

B.  Allegations of Loan to Petitioner From BP Concessions

At trial, petitioner testified that even if the S corporation election remained in effect, the distribution of $447,653 from BP Concessions was actually a loan to him from the corporation.  Generally, proceeds of a loan do not constitute income to a borrower because the benefit is offset by an obligation to repay.  United States v. Rochelle, 384 F.2d 748, 751 (5th Cir. 1967); Arlen v. Commissioner, 48 T.C. 640, 648 (1967).  Whether a particular transaction actually constitutes a loan, however, is to be determined upon consideration of all the facts.  Fisher v. Commissioner, 54 T.C. 905, 909 (1970).

For a payment to constitute a loan, at the time the payments are received the recipient must intend to repay the amounts and the transferor must intend to enforce payment.  Haag v. Commissioner, 88 T.C. 604, 615 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988); Beaver v. Commissioner, 55 T.C. 85, 91 (1970).  Further, the obligation to repay must be unconditional and not contingent on a future event.  United

States v. Henderson, 375 F.2d 36, 39 (5th Cir. 1967); Bouchard v. Commissioner, 229 F.2d 703 (7th Cir. 1956), affg. T.C. Memo. 1954-243; Haag v. Commissioner, supra at 615.

Petitioner offered no convincing proof that the funds were actually lent to him.  The "Agreement to Change BP Concessions to a C Corporation" signed by petitioner and Mr. Foster mentions the shareholders' intentions to treat the distribution as a loan. However, this document was prepared more than 4-1/2 years after the board meeting occurred and was drafted in support of an attempt to settle the issues of this case.  No other documents were submitted regarding the alleged loan.  The Court is not required to, and in this case we do not, accept petitioner's unsubstantiated testimony regarding this issue.  See Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1965), affg. 41 T.C. 593 (1964).

C.   Issues Raised Initially in Petitioners'
     Posttrial Briefs

In their posttrial briefs, petitioners raised for the first time the issues of abatement of interest and penalties, an entitlement to spousal defenses, a request for an installment agreement, and a request for other reasonable alternatives to collection.  These issues were not raised in the petition to the Court or at trial.  Nor were they raised at the collection due process hearing.  Generally, in a section 6330 proceeding the Court is not obligated to consider requests for abatement of

penalties or proposals of collection alternatives if they were not raised by the taxpayer at the section 6330 hearing or otherwise brought to the attention of the Appeals Office. Magana v. Commissioner, 118 T.C. 488, 493 (2002); Miller v. Commissioner, 115 T.C. 582, 589 n.2 (2000); Sego v. Commissioner, 114 T.C. at 612. Generally, we do not consider issues that are raised for the first time at trial or on brief, and we decline to do so in this case. Foil v. Commissioner, 92 T.C. 376, 418 (1989), affd. 920 F.2d 1196 (5th Cir. 1990); Markwardt v. Commissioner, 64 T.C. 989, 997 (1975). Petitioner has failed to raise a spousal defense, make a valid challenge to the appropriateness of respondent's intended collection action, or offer alternative means of collection. These issues are now deemed conceded. See Rule 331(b)(4).

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

Decision will be entered for respondent.