# United States Tax Court

T.C. Memo. 2024-107

PAUL V. APPLEGARTH,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket Nos. 3178-20, 3972-20.                     Filed December 10, 2024.

————

*Mitchell I. Horowitz*, for petitioner.

*Randall B. Childs*, *Mark K. Park*, and *Daniel C. Chavez*, for respondent in Docket No. 3178-20.

*Randall B. Childs* and *A. Gary Begun*, for respondent in Docket No. 3972-20.

## TABLE OF CONTENTS

MEMORANDUM FINDINGS OF FACT AND OPINION ..................... 2

FINDINGS OF FACT ............................................................. 3

OPINION............................................................................ 4

    I.     Applegarth's entitlement to his overpayment of tax for the 2014 tax year is barred by statute................................... 5

    II.    Applegarth's entitlement to his overpayment of tax for the 2015 tax year is barred by statute................................ 14

       A.   The IRS's primary analysis explained........................... 15

       B.   The IRS's alternative analysis explained....................... 16

       C.   Applegarth's position, and resolution........................... 17

    III.    These cases were not settled before trial...................... 18

**[\*2]**    MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, *Judge*: On November 21, 2019, the Internal Revenue Service (IRS or respondent) mailed a Notice of Deficiency to petitioner, Paul V. Applegarth, determining income tax deficiencies of $4,465 for tax year 2014 and $66,935 for tax year 2015.  As to tax year 2015, the Notice of Deficiency determined a section 6651(a)(1)[1] addition to tax of $8,535, a section 6651(a)(2) addition to tax of $8,156 (calculated as of October 31, 2019), and a section 6654 addition to tax of $1,206.

Applegarth timely filed a Petition with this Court on February 18, 2020, challenging the IRS's determinations in the Notice of Deficiency for the 2014 tax year.  This Court assigned Docket No. 3178-20 to this Petition.

Applegarth timely filed a separate Petition with this Court on February 27, 2020, challenging the IRS's determinations in the Notice of Deficiency for the 2015 tax year.  This Court assigned Docket No. 3972-20 to the Petition Applegarth filed for the 2015 tax year.

On May 28, 2021, this Court consolidated the cases at Docket Nos. 3178-20 and 3972-20.

We have jurisdiction to redetermine the deficiency for each year under section 6213(a).  We have jurisdiction to determine the amount of any overpayment for each year under section 6512(b)(1).

The parties have stipulated the amounts of deficiencies and overpayments for the 2014 and 2015 tax years.  The parties have additionally stipulated that for tax year 2015, Applegarth is not liable for additions to tax under sections 6651(a)(1) and (2) and 6654.

Applegarth does not dispute that refunds of the stipulated overpayments for 2014 and 2015 are barred by sections 6511(b)(2) and 6512(b)(3) if these statutory provisions are not subject to equitable tolling.  We hold that these statutory provisions are not subject to equitable tolling.

---

[1] Unless otherwise indicated, references to sections are to the Internal Revenue Code of 1986, Title 26 U.S.C. (I.R.C.), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*3]                    FINDINGS OF FACT

Applegarth resided in Florida when he filed the Petitions in these cases.[2]

On April 15, 2015, the IRS granted Applegarth an extension to file his 2014 income tax return until October 15, 2015.

On April 15, 2016, the IRS granted Applegarth an extension to file his 2015 income tax return until October 15, 2016.

Over several years, beginning in 2014, Applegarth made payments towards his 2014 and 2015 tax obligations. He made all the payments either on or before the extended filing deadlines for the respective tax years.

On June 24, 2019, Applegarth filed his 2014 tax return.

On November 21, 2019, the IRS mailed the Notice of Deficiency to Applegarth.

In March 2022 Applegarth sent an unsigned 2015 Form 1040, U.S. Individual Income Tax Return, to IRS counsel.

The timeline of events regarding Applegarth's 2014 income tax is follows:

---

[2] Section 7482(b) governs the venue for appeal from a decision of this Court. In general, if a taxpayer is an individual, the appellate venue is the circuit in which the taxpayer resided when the petition was filed. I.R.C. § 7482(b)(1)(A). Under *Golsen v. Commissioner*, 54 T.C. 742, 756–57 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971), we abide by precedent of the U.S. Court of Appeals for the Eleventh Circuit squarely on point in deciding these cases.

4

| [*4] | Timeline of Events – 2014 Tax Year |
| --- | --- |
| Date | Description |
| Apr. 15, 2014 | Applegarth made a payment of $49,000 for the 2014 tax year. |
| Apr. 19, 2014 | Applegarth made a payment of $4,500 for the 2014 tax year. |
| Jan. 17, 2015 | Applegarth made a payment of $19,500 for the 2014 tax year. |
| Oct. 15, 2015 | Extended deadline for Applegarth to file 2014 tax return. |
| June 24, 2019 | Applegarth filed his 2014 tax return alleging an overpayment for the year. |
| Nov. 21, 2019 | IRS issued Notice of Deficiency for tax years 2014 and 2015. |
| Feb. 18, 2020 | Applegarth timely filed Petition with Tax Court. |

The timeline of events regarding Applegarth's 2015 income tax is as follows:

| Timeline of Events – 2015 Tax Year | |
| --- | --- |
| Date | Description |
| Apr. 27, 2015 | Applegarth made a payment of $9,000 for the 2015 tax year. |
| Sept. 18, 2015 | Applegarth made a payment of $10,000 for the 2015 tax year. |
| April 15, 2016 | Applegarth made a $10,000 payment for the 2015 tax year. |
| Oct. 15, 2016 | Extended deadline for Applegarth to file 2015 tax return. |
| Nov. 21, 2019 | IRS issued Notice of Deficiency for tax years 2014 and 2015. |
| Feb. 27, 2020 | Applegarth timely filed Petition with Tax Court. |
| Mar. 2022 | Applegarth sent his 2015 Form 1040 to IRS counsel alleging that he had an overpayment for the year. |

On June 23, 2023, the parties stipulated the following: There is an income tax deficiency of $4,465 and an overpayment of $78,472 for Applegarth's 2014 tax year; there is an income tax deficiency of $25,576 and an overpayment of $9,603 for Applegarth's 2015 tax year; and Applegarth is not liable for additions to tax for the 2015 tax year under sections 6651(a)(1) or (2) or 6654.

## OPINION

As a general rule, taxpayers in Tax Court litigation bear the burden of proof. Rule 142(a). Applegarth does not contend the burden of proof should be imposed on the IRS. We conclude that he bears the burden of proof.

**[\*5]** I.  *Applegarth's entitlement to his overpayment of tax for the 2014 tax year is barred by statute.*

The parties have stipulated that there is an overpayment of tax of $78,472 for 2014.

A number of statutes inform the parties' positions regarding Applegarth's entitlement to a refund of the overpayment for 2014. These provisions are:

- section 6511(a), (b), and (h);

- 28 U.S.C. § 1491(a)(1);

- 28 U.S.C. § 1346(a)(1);

- section 7422(a);

- section 6532(a)(1);

- section 6512(a); and

- section 6512(b)(1) and (3).

We discuss these provisions below.

Section 6511(a) provides in part:

Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

Section 6511(b)(1) provides: "No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period."

**[\*6]**     Section 6511(b)(2) provides:

    (A) Limit where claim filed within 3-year period.—If the claim was filed by the taxpayer during the 3-year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return. If the tax was required to be paid by means of a stamp, the amount of the credit or refund shall not exceed the portion of the tax paid within the 3 years immediately preceding the filing of the claim.

    (B) Limit where claim not filed within 3-year period.—If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim.

    (C) Limit if no claim filed.—If no claim was filed, the credit or refund shall not exceed the amount which would be allowable under subparagraph (A) or (B), as the case may be, if claim was filed on the date the credit or refund is allowed.

Section 6511(h)(1) provides: "In the case of an individual, the running of the periods specified in sections (a), (b), and (c) shall be suspended during any period of such individual's life that such individual is financially disabled." Section 6511(h)(2)(A) provides: "For purposes of paragraph (1), an individual is financially disabled if such individual is unable to manage his financial affairs by reason of a medically determinable physical or mental impairment of the individual which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. An individual shall not be considered to have such an impairment unless proof of the existence thereof is furnished in such form and manner as the Secretary [of the Treasury] may require." Section 6511(h)(2)(B) provides: "An individual shall not be treated as financially disabled during any period that such individual's spouse or any other person is authorized to act on behalf of such individual in financial matters."

Title 28 U.S.C. § 1346(a)(1) provides that the district courts have original jurisdiction, concurrent with the United States Court of Federal Claims, of "[a]ny civil action against the United States for the recovery

**[*7]** of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected."

Title 28 U.S.C. § 1491(a)(1) provides that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon . . . any Act of Congress or any regulation of an executive department."

Section 7422(a) provides:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary [of the Treasury], according to the provisions of law in that regard, and the regulations of the Secretary [of the Treasury] established in pursuance thereof.

Section 6532(a)(1) provides:

No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary [of the Treasury] renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing . . . by the Secretary [of the Treasury] to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

Section 6512(a) provides that if the IRS has mailed a notice of deficiency to the taxpayer, and the taxpayer has filed a timely petition with the Tax Court with respect to the tax year, no credit or refund of income tax for the taxable year shall be allowed to be made except in six instances, one of which is, under section 6512(a)(1), "[a]s to overpayments determined by a decision of the Tax Court which has become final."

Section 6512(b)(1) generally provides that

if the Tax Court finds . . . that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the

[*8] decision of the Tax Court has become final, be credited or refunded to the taxpayer.

However, section 6512(b)(3) provides:

No such credit or refund shall be allowed or made of any portion of the tax unless the Tax Court determines as part of its decision that such portion was paid—

(A) after the mailing of the notice of deficiency,

(B) within the period which would be applicable under section 6511(b)(2), (c), or (d), if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment, or

(C) within the period which would be applicable under section 6511(b)(2), (c), or (d), in respect of any claim for refund filed within the applicable period specified in section 6511 and before the date of the mailing of the notice of deficiency—

(i) which had not been disallowed before that date,

(ii) which had been disallowed before that date and in respect of which timely suit for refund could have been commenced as of that date, or

(iii) in respect of which a suit for refund had been commenced before that date and within the period specified in section 6532.

In a case described in subparagraph (B) where the date of the mailing of the notice of deficiency is during the third year after the due date (with extension) for filing the return of tax and no return was filed before such date, the applicable period under subsections (a) and (b)(2) of section 6511 shall be 3 years.

We now explain the IRS's positions regarding Applegarth's entitlement to the 2014 overpayment.

Addressing the requirement of filing a timely claim for refund set forth by section 6511(a), the IRS states that the return filed by

**[*9]** Applegarth on June 24, 2019, also serves as a claim for refund. In support of this statement, the IRS cites Treasury Regulation § 301.6402-3(a)(5), which provides:

> A properly executed individual, fiduciary, or corporation original income tax return or an amended return (on 1040X or 1120X if applicable) shall constitute a claim for refund or credit within the meaning of . . . section 6511 for the amount of the overpayment disclosed by such return (or amended return).

Because the claim for refund would have been filed at the same time as the return, the IRS concedes that the claim for refund was "filed . . . within 3 years from the time the return was filed." I.R.C. § 6511(a). However, the IRS also takes the position that Applegarth does not need to file a timely claim for refund under section 6511(a) in order to be awarded a refund of the overpayment by the Tax Court: "Even if a taxpayer does not timely file a claim for refund under section 6511, the Tax Court may still have jurisdiction to award a refund under I.R.C. § 6512. *See Commissioner v. Lundy*, 516 U.S. 235, 240-241 (1996)." Thus, the IRS does not rely on section 6511(a) for the proposition that Applegarth may not be awarded a refund for the overpayment for the 2014 tax year.

As to section 6511(b)(2), however, the IRS takes the view that this provision bars a refund of overpayment for 2014. The IRS contends that section 6511(b)(2), in its role as a stand-alone provision without consideration of its adoption by section 6512(b)(3)(B), bars the Tax Court from refunding to Applegarth the 2014 overpayment. The IRS explains that the lookback period in section 6511(b)(2) begins on December 24, 2015. The IRS calculates this date as follows: (1) June 24, 2019 (the date of the filing of the refund claim), (2) minus three years, (3) minus six months (the length of the extension of the return filing deadline). *See* I.R.C. § 6511(b)(2)(A). The IRS observes that all of Applegarth's payments of tax for 2014 were made before December 24, 2015, and thus were made before the section 6511(b)(2) lookback period.

The IRS also contends that section 6512(b)(3) bars the Tax Court from awarding a refund to Applegarth of the 2014 overpayment. Section 6512(b)(3) provides that the Tax Court can award an overpayment to a taxpayer only in three circumstances. These circumstances are delineated in section 6512(b)(3)(A), (B), and (C), respectively.

**[\*10]** The IRS contends that section 6512(b)(3)(A) does not permit the refund because none of the payments of the 2014 tax liability was made after November 21, 2019, the mailing date of the Notice of Deficiency.

The IRS contends that section 6512(b)(3)(B) does not permit the refund. The working of section 6512(b)(3)(B) was well explained by the Supreme Court in *Commissioner v. Lundy*, 516 U.S. 235, 242 (1996). *Lundy* states that section 6512(b)(3)(B) incorporates the "lookback" periods of section 6511(b)(2) and "directs the Tax Court to determine the applicable [lookback] period by inquiring into the timeliness of a hypothetical claim for refund filed 'on the date of the mailing of the notice of deficiency.'" *Commissioner v. Lundy*, 516 U.S. at 242 (quoting I.R.C. § 6512(b)(3)(B)). The IRS observes that the hypothetical claim for refund would be filed on the mailing date of the Notice of Deficiency (that is, on November 21, 2019) and that this date would be within the three-year period described by section 6511(a). For these purposes, this three-year period began with the actual date Applegarth filed his claim for refund, June 24, 2019. Thus, the IRS contends, the relevant lookback period imposed by section 6512(b)(3)(B) is the lookback period of section 6511(b)(2)(A), not the lookback period of section 6511(b)(2)(B). Under section 6511(b)(2)(A), the lookback period is "the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." The IRS observes that this lookback period begins three years and six months before the November 21, 2019 date of the hypothetical claim for refund; therefore, this lookback period begins on May 21, 2016. All payments of the 2014 tax liability were made before that date. Therefore, according to the IRS, the section 6511(b)(3)(B) condition is not satisfied.

The IRS contends that section 6512(b)(3)(C) does not permit the refund. A payment is covered by section 6512(b)(3)(C) only if it is made "within the period which would be applicable under section 6511(b)(2) . . . in respect of any claim for refund filed within the applicable period specified in section 6511." The IRS explains that a "claim for refund" was "filed within the applicable period specified in section 6511." This is because Applegarth filed his claim for refund on June 24, 2019, the same day he filed his return. According to the IRS's theory, the "period which would be applicable under section 6511(b)(2)" in respect of this claim for refund begins on December 24, 2015, and ends on June 24, 2019. However, the payment dates fell before this period.

In summary, the IRS makes two arguments as to why Applegarth is not entitled to his overpayment for tax year 2014: (1) section

**[\*11]** 6511(b)(2) bars the overpayment and (2) section 6512(b)(3) bars the overpayment. Both arguments are explicitly set forth in the IRS's opening brief.

Applegarth does not dispute the IRS's arguments except that he asserts the statutory provisions are equitably tolled. The following excerpt from Applegarth's Answering Brief exemplifies his concession that the statutory provisions bar overpayment but for equitable tolling: "Petitioner has never denied that the 2014 or 2015 returns were not filed within three years of their due dates, or the payment dates which measure when a claim for refund can be filed." The following excerpt from Applegarth's Opening Brief illustrates his position that equitable tolling applies to these statutory provisions:

> Under the particular circumstances of this case, we believe there is a good faith argument to be made that the Supreme Court would, and should, revisit *Brockamp*, *supra*, and either determine that *Brockamp* should be overruled, or that additional, nonstatutory exceptions to the refund filing dates should apply in exigent circumstances where the Internal Revenue Service, through its employees and agents, has behaved in such a way as to willfully interfere with a taxpayer's ability to meet the refund due date filing requirement.
>      . . . .
> While the petitioner acknowledges the U.S. Supreme Court's opinion in *United States v. Brockamp*, 519 U.S. 347 (1997), as a precedent on the question of whether the time frames for filing a refund claim under Sections 6511 and 6512 are jurisdictional or claims processing dates, the current makeup of the Supreme Court has evidenced a willingness to revisit prior precedent and, in particular circumstances, distinguish or reverse those old cases. *See, e.g., South Dakota v. Wayfair, Inc.*, 138 S.Ct. 2080 (2018) (reversing two prior Supreme Court cases on nexus for sales and use tax purposes); *Dobbs v. Jackson Women's Health Organization*, 597 U.S. \_\_, 142 S.Ct. 2228 (2022)(overturning the Supreme Court's prior decisions in support of abortion rights of *Roe v. Wade*, 410 U.S. 113 (1973) and *Planned Parenthood of Southeastern Pa., v. Casey*, 505 U.S. 833 (1992)).

**[\*12]**  So, Applegarth recognizes that equitable tolling of the statutory provisions relied on by the IRS is inconsistent with *Brockamp*, but he predicts that the current Supreme Court might reverse *Brockamp*. The IRS disagrees that equitable tolling governs the statutory provisions upon which it relies.

We need not address the merits of the IRS's position that, before consideration of equitable tolling, Applegarth's entitlement to a refund of the overpayment for 2014 is barred by (1) section 6511(b)(2) and (2) section 6512(b)(3). As explained above, Applegarth does not dispute that the IRS's position is correct. We do not ordinarily resolve issues that are not disputed by the parties. Therefore, for the purpose of these cases, we assume that Applegarth's entitlement to a refund of the overpayment for 2014 is indeed barred by (1) section 6511(b)(2) and (2) section 6512(b)(3).

Next, we discuss Applegarth's position on equitable tolling.

We agree with Applegarth's implication that *Brockamp* is inconsistent with the proposition that equitable tolling governs (1) section 6511(b)(2) and (2) section 6512(b)(3).

In *United States v. Brockamp*, 519 U.S. 347, 348 (1997), the taxpayers filed claims for refund more than three years after the filing of their returns. Thus, the taxpayers were not in compliance with section 6511(a). The Supreme Court held that the three-year requirement of section 6511(a) was not subject to equitable tolling. *Brockamp*, 519 U.S. at 349. The Supreme Court reasoned that, although "[o]rdinarily limitations statutes use fairly simple language, which one can often plausibly read as containing an implied 'equitable tolling' exception," section 6511 "sets forth its limitations in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions." *Brockamp*, 519 U.S. at 350.

Under the reasoning of *Brockamp*, section 6511(b)(2) is not subject to equitable tolling. Section 6511(b)(2) is written in a "highly detailed technical manner." Section 6512(b)(3) is also written in a "highly detailed" manner. The reasoning of *Brockamp* leads us to conclude that section 6512(b)(3) too is not subject to equitable tolling.[3]

---

[3] Because we hold none of the statutory provisions relied on by the IRS allows equitable tolling, it is unnecessary to make findings regarding the factual allegations

**[\*13]** The force of *Brockamp*'s reasoning has not been diminished by subsequent developments in the law.

Shortly after *Brockamp* was decided, Congress added section 6511(h). Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 3202, 112 Stat. 685, 740. This 1998 provision suspends the periods set forth in section 6511 for the time that a taxpayer is unable to manage financial affairs by reason of a permanent physical or mental impairment. Section 6511(h) would seemingly cover facts similar to those alleged in *Brockamp*. *See* H.R. Rept. No. 105-599, at 255 (1998) (Conf. Rep.), *reprinted in* 1998-3 C.B. 747, 1009. (*Brockamp* involved two taxpayers, one alleging senility, the other alcoholism). Section 6511(h) does not relieve Applegarth of the effects of section 6511(b)(2) because his allegations do not involve physical or mental impairment. Furthermore, the enactment of the narrow section 6511(h) exception for physical and mental impairment suggests that Congress did not intend there to be a broader equitable-tolling exception to the period in section 6511(b)(2) (or the other periods in section 6511). *See Brockamp*, 519 U.S. at 351–52 ("In addition, § 6511 sets forth explicit exceptions to its basic time limits, and those very specific exceptions do not include 'equitable tolling.'"); *Doe v. KPMG, LLP*, 398 F.3d 686, 689 (5th Cir. 2005) ("Congress's decision to specify further exceptions to the statute of limitations—without adding a general equitable tolling provision—further justifies the Supreme Court's reading of the statute in *Brockamp*."). Similarly, the enactment of section 6511(h) supports our view that section 6512(b)(3) is not subject to equitable tolling.

In 2022 *Brockamp* was distinguished by the Supreme Court in *Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493 (2022). *Boechler* held that equitable tolling applies to the 30-day period for a person to appeal a collection due process determination. *Id.* at 1501. The 30-day period set forth in section 6330(d)(1) provides: "The person may, within 30 days of a determination under this section, petition the Tax Court for review of such determination (and the Tax Court shall have jurisdiction with respect to such matter)." *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1500–01, distinguished *Brockamp* because section 6330(d)(1) does not have the "detailed" and "technical" language of section 6511(a). The

---

that Applegarth says would toll the statutory periods if they permitted equitable tolling. Among these allegations is the assertion that IRS's delay or mishandling of the 2013 examination prevented Applegarth from timely filing his 2014 and 2015 returns.

**[\*14]** *Boechler* opinion does not undermine the reasoning in *Brockamp* regarding time periods imposed by "detailed" and "technical" statutes. As explained above, sections 6511(b)(2) and 6512(b)(3) are such statutes; under the reasoning of *Brockamp*, they are not subject to equitable tolling.

In conclusion, Applegarth is not entitled to a refund of the overpayment for 2014.

II.    *Applegarth's entitlement to his overpayment of tax for the 2015 tax year is barred by statute.*

The parties have stipulated that there is an overpayment of tax of $9,603 for 2015.

As with the overpayment for 2014, the IRS contends that the Tax Court is barred from awarding a refund for the 2015 overpayment by two statutory provisions: (1) section 6511(b)(2) and (2) section 6512(b)(3).

The IRS's position regarding the 2015 overpayment includes both a primary analysis and an alternative analysis. The primary analysis assumes that the Form 1040 submitted to IRS counsel in March 2022 does not constitute a filed return or a filed claim for refund. The alternative analysis assumes that the Form 1040 constitutes a filed return and a filed claim for refund.

The IRS is not indifferent between the two modes of analysis. Although it hedges its bets by advancing the alternative analysis, the IRS urges us to conclude that the Form 1040 submitted to the IRS's counsel in March 2022 constitutes neither a filed return nor a filed claim for refund. By contrast, Applegarth urges that the Form 1040 constitutes both a filed return and a filed claim for refund.

We hold that the Form 1040 does not constitute a filed return because (1) it was unsigned and (2) it was submitted only to IRS counsel, not to the IRS. *See Reaves v. Commissioner*, 31 T.C. 690, 713 (1958) (unsigned), *aff'd*, 295 F.2d 336 (5th Cir. 1961); *Espinoza v. Commissioner*, 78 T.C. 412, 422 (1982) (submitted to IRS counsel). And we hold that the Form 1040 does not constitute a filed claim for refund because it was unsigned. *See Brown v. United States*, 22 F.4th 1008, 1012–13 (Fed. Cir. 2022).

**[\*15]** These holdings in the paragraph above mean that only the IRS's primary analysis is directly relevant to the question of whether Applegarth is entitled to a refund of his overpayment for 2015. However, we explain in detail below both the IRS's primary analysis and its alternative analysis. That is because Applegarth concedes that both analyses are correct under the assumptions underlying each analysis (before consideration of equitable tolling).

A.     *The IRS's primary analysis explained*

The IRS states that the 2015 overpayment does not satisfy the requirement of section 6511(b)(1). Section 6511(b)(1) provides that no credit or refund of an overpayment can be allowed unless the taxpayer has filed a timely claim for refund. Because the Form 1040 submitted by Applegarth was not a claim for refund, the IRS argues, section 6511(b)(1) is not satisfied. However, as explained before, the IRS makes the following concession: "Even if a taxpayer does not timely file a claim for refund under section 6511, the Tax Court may still have jurisdiction to award a refund under I.R.C. § 6512. *See Commissioner v. Lundy*, 516 U.S. 235, 240-241 (1996)." In other words, the IRS is not relying on section 6511(b)(1) for the proposition that a refund of the 2015 overpayment payment is barred.

Instead, the IRS argues that section 6511(b)(2) precludes a refund of the 2015 overpayment. Section 6511(b)(2)(C) provides: "If no claim was filed, the credit or refund shall not exceed the amount which would be allowable under subparagraph (A) or (B), as the case may be, if claim was filed on the date the credit or refund is allowed." Here is the IRS's argument: "And if respondent had allowed the refund in March 2022 without a claim, the refund would still be barred under section 6511(b)(2)(C) because no taxes were paid within the 2-year lookback period or the 3-year lookback period from March 2022."

The IRS also contends that section 6512(b)(3) precludes a refund of the 2015 overpayment. Recall that section 6512(b)(3) permits a refund only on satisfaction of one of three conditions set forth in section 6512(b)(3)(A), (B), and (C), respectively.

The IRS contends that section 6512(b)(3)(A) does not permit the refund because none of the payments of the 2015 tax liability was made after November 21, 2019, the mailing date of the Notice of Deficiency.

The IRS contends that section 6512(b)(3)(B) does not permit the refund. The IRS observes that a hypothetical claim for refund filed on

16

**[\*16]** the date of the Notice of Deficiency (that is, on November 21, 2019) would not be filed within the three-year period described by section 6511(a). The three-year period described by section 6511(a) is the three-year period after the filing of the return. Because Applegarth never filed a return or claim for refund for 2015, no claim for refund was filed during the three-year period described by section 6511(a). Thus, section 6512(b)(3)(B) is satisfied only if Applegarth made his payments against his 2015 tax liability during the two-year period described by section 6511(b)(2)(B).[4] This is the two-year period immediately preceding the filing of the hypothetical claim for refund, i.e., the two-year period immediately preceding November 21, 2019. All his payments against his 2015 tax liability were made before November 21, 2017. Therefore, according to the IRS, the section 6512(b)(3)(B) condition is not satisfied.

The IRS contends that section 6512(b)(3)(C) does not permit the refund because no claim for refund was filed before the mailing date of the Notice of Deficiency. The Notice of Deficiency was mailed on November 21, 2019, and, pursuant to the assumption underlying the primary analysis, no claim for refund was filed by Applegarth before or after.

B.    *The IRS's alternative analysis explained*

The IRS contends that section 6511(b)(2)(A) bars the Tax Court from awarding a refund to Applegarth of the 2015 payment. Assuming that the Form 1040 submitted by Applegarth in March 2022 constitutes both a filed return and a filed claim for refund, the IRS observes that Applegarth had filed a claim for refund within the three-year period set forth in section 6511(a). Therefore, the IRS observes, the three-year period set forth in section 6511(b)(2)(A) would have begun in March 2019. None of the payments was made before this three-year period.

---

[4] *Commissioner v. Lundy*, 516 U.S. at 245, explained:

But in the case of delinquent filers, §6512(b)(3)(B) establishes only a 2-year look-back period, so the delinquent filer is not assured the opportunity to seek a refund in Tax Court: If the notice of deficiency is mailed more than two years after the taxes were paid, the Tax Court lacks jurisdiction to award the taxpayer a refund.

*Lundy* overruled the U.S. Court of Appeals for the Fourth Circuit's view that the two-year lookback period "must be defined in terms of the date that the taxpayer *actually filed* a claim for refund." *Id.* at 246 (citing *Lundy v. IRS*, 45 F.3d 856, 861 (4th Cir. 1995), *rev'd*, 516 U.S. 235 (1996)).

**[\*17]** The IRS also contends that section 6512(b)(3) bars the Tax Court from awarding a refund to Applegarth of the 2015 overpayment. Section 6512(b)(3) provides that the Tax Court can award an overpayment to a taxpayer only in three circumstances. These circumstances are delineated in section 6512(b)(3)(A), (B), and (C), respectively.

The IRS contends that section 6512(b)(3)(A) does not permit the refund of the 2015 overpayment because none of the payments of the 2015 tax liability was made after November 21, 2019, the mailing date of the Notice of Deficiency.

The IRS contends that section 6512(b)(3)(B) does not permit the refund. The IRS observes that the hypothetical claim for refund would have been filed on November 21, 2019. However, the return would have (it is assumed) been filed later, in March 2022. Thus, the hypothetical claim for refund would not be timely. It would follow that only payments within the two-year lookback period of section 6511(b)(2)(B) could be refunded. This two-year lookback period would begin two years before the November 21, 2019 hypothetical claim for refund. In other words, the two-year lookback period would begin November 21, 2017. This was after all of the payments against the 2015 liability were made.

The IRS contends that section 6512(b)(3)(C) does not permit the refund. Even if the Form 1040 submitted by Applegarth is considered a claim for refund, it was not filed before the Notice of Deficiency.

In summary, the IRS makes two arguments as to why Applegarth is not entitled to his overpayment for tax year 2015: (1) section 6511(b)(2) bars the overpayment and (2) section 6512(b)(3) bars the overpayment. As with the 2014 tax year, both arguments are set forth in the IRS's opening brief.

C.     *Applegarth's position, and resolution*

Applegarth does not contest that refund of the 2015 overpayment would be barred without equitable tolling. As to the IRS's primary analysis, Applegarth does not contest the correctness of this analysis except that he asserts that the Form 1040 he submitted should be considered a filed return and a filed claim for refund. Although he contends that the Form 1040 he submitted should be considered a filed return and a filed claim for refund, he does not dispute the IRS's alternative analysis that even under those circumstances a refund would be barred by (1) section 6511(b)(2) and (2) section 6512(b)(3).

**[\*18]** Applegarth's entitlement to refund of the overpayment for tax year 2015 thus hinges on whether there can be equitable tolling of (1) section 6511(b)(2) and (2) section 6512(b)(3). As we have already explained *supra* OPINION Part I, in our view neither statutory provision permits equitable tolling.

We conclude that Applegarth is not entitled to a refund of the overpayment for the 2015 tax year.

III.    *These cases were not settled before trial.*

A valid settlement, once reached, cannot be repudiated by either party. *See Dorchester Indus. Inc. v. Commissioner*, 108 T.C. 320, 330 (1997), *aff'd*, 208 F.3d 205 (3d Cir. 2000). The actual merits of the settled controversy are without consequence. *Id.* Because a settlement agreement is a contract, the general principles of contract law determine whether a settlement has been reached. *Id.* A prerequisite to the formation of a contract is an objective manifestation of mutual assent to its essential terms. *Id.* Sometimes a settlement agreement is executed by the parties and filed with the Court. *Stamm Int'l Corp. v. Commissioner*, 90 T.C. 316 (1988). A settlement agreement may also be created by an offer and acceptance through letters. *See Dorchester Indus. Inc.*, 108 T.C. at 330. But a settlement agreement need not be in writing. For example, if a case is called by the Court, and one-party states on the record that there is a settlement agreement with the other party, and that party states with specificity the essential terms of that settlement agreement, and the other party states that this is the settlement agreement so described, the Court may view this oral discussion as a valid settlement agreement. *See, e.g.*, *Weagley v. Commissioner*, T.C. Memo. 1991-235.

These 2014 and 2015 cases were previously set for trial before the Court at the Trial Session commencing March 28, 2022. When the cases were called from the calendar, a discussion ensued in which both parties implied that they had agreed to settle the cases. For example, Applegarth stated: "I think we have an agreement." He added the following reason: "because I thought that several times." And IRS counsel said, "I believe there is an agreement to resolve this matter" but it requires (1) "some slight amendments or edits to the current . . . Stipulation . . . of Decision" and (2) "an additional . . . Stipulation of Settled Issues that I will draft and send to Mr. Applegarth." Applegarth also suggested that there had been a disagreement on what decision should be entered: "[S]omehow we got a draft Decision that said we had

[*19] not filed returns, even though the numbers in the Draft Decision reflect the returns." Applegarth also explained that he and IRS counsel were working on a stipulation of facts, and that the stipulation of facts would provide that "we had filed returns . . . the IRS has accepted them . . . and this is going to be credited . . . in accordance with the law . . . [a]nd any overpayments which are substantial will be rolled forward for future years."

Applegarth now contends that the failure of IRS counsel to contradict this last statement indicated "agreement with the concept that petitioner and his wife had filed joint income tax returns for 2014 and 2015, and would be entitled to the overpayments which were determined as part of settling the 2013 tax year." Applegarth also contends that this "concept" is part of an agreement to settle the two cases in their entirety.

Although Applegarth and his wife litigated a 2013 deficiency case before this Court, our decision document resolving that case redetermined only the amount of the deficiency. The amount so redetermined was the same amount the parties stipulated should be entered in their stipulation of proposed decision, and was the same amount determined in the Notice of Deficiency for 2013. The decision did not make any determinations regarding the amount of an overpayment. And in these 2014 and 2015 cases there is very little information in the Court papers or trial record about the amount of the 2013 overpayment, other than a statement in Exhibit 2-J, an IRS record, that the $49,000 payment against the 2014 tax liability was an "OVERPAID CREDIT FROM PRIOR TAX PERIOD." Thus, even had there been a settlement agreement in the present cases providing an award of a refund of overpayments for tax years 2014 and 2015 equal to the "overpayment for the 2013 tax year," such a settlement agreement would be ambiguous and incomplete.

And despite the implication by both parties at the calendar call that an agreement had already been reached, no one at the calendar call stated any settlement terms. For example, no one stated (1) the amounts of deficiency, (2) the amounts of overpayment, or (3) how the limitations of section 6511 or 6512 on refunds of overpayments would be handled. These would be essential terms in any settlement agreement.

At the trial, which occurred on July 11, 2023, we gave Applegarth the opportunity to produce evidence regarding his entitlement to refund of the overpayments. We also gave him the opportunity to produce

**[\*20]** evidence of the settlement. He adduced no testimony and produced no documents showing any of the terms of the settlement referred to at the calendar call. As explained earlier, the discussion at calendar call referred only vaguely to the settlement agreement. There is not a written settlement agreement in the record. There is no exchange of correspondence in the record constituting any offer or acceptance of a settlement agreement. There is no testimony as to the date or circumstances of any oral agreement reached before the calendar call. Applegarth has the burden of proof, *see* Rule 142(a), and he has not proven the existence of a valid settlement agreement on or before March 23, 2022.

We therefore hold that these cases were not settled at the March 23, 2022 calendar call, nor were the cases settled in the negotiations that took place before that day. We need not opine on the IRS's other arguments on the point, including its argument that IRS counsel never has the authority to waive the requirements of sections 6511 and 6512.

We have considered all other arguments by the parties, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

*Appropriate decisions will be entered.*